Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

FILED 15 DEC '23 15:09 USDC-ORP

# UNITED STATES DISTRICT COURT

for the

District of     Oregon

Portland    Division

| | | |
|---|---|---|
| Sara Murray | ) | Case No. _3:23-CV-1899-AR_ |
| _____ | ) | *(to be filled in by the Clerk's Office)* |
| **Plaintiff(s)** | ) | |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) | |
| | ) | |
| **-v-** | ) | |
| | ) | |
| King County Court, et Al. | ) | |
| ~~See Attached List.~~ | ) | |
| | ) | |
| **Defendant(s)** | ) | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) | |

## COMPLAINT AND REQUEST FOR INJUNCTION

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Sara Murray % Oregon Department of Justice |
| Street Address | PO Box 1108 ACP 0111-22 |
| City and County | Salem |
| State and Zip Code | Oregon 97308 |
| Telephone Number | 206-910-8991 |
| E-mail Address | sara.c.murray@gmail.com |

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

| | |
|---|---|
| City and County | Seattle, King |
| State and Zip Code | WA 98104 |
| Telephone Number | 206-625-5011 |
| E-mail Address *(if known)* | |

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question          ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

ADA Title 42 USC, and Amendments #1, #4, , #5, #6, #7,  #8, #9, #10

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)*     Sara Murray     , is a citizen of the State of *(name)*     Oregon     .

b.    If the plaintiff is a corporation

The plaintiff, *(name)*     , is incorporated under the laws of the State of *(name)*     ,

and has its principal place of business in the State of *(name)*

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.     The Defendant(s)

All defendants are citizens of WA

a.     If the defendant is an individual

The defendant, *(name)*       Judge Holloway, Judge O'Donnell       , is a citizen of

the State of *(name)*       Washington       . Or is a citizen of

*(foreign nation)*  _____ .

b.     If the defendant is a corporation

The defendant, *(name)*  _____ , is incorporated under

the laws of the State of *(name)*  _____ , and has its

principal place of business in the State of *(name)*  _____ .

Or is incorporated under the laws of *(foreign nation)*  _____ ,

and has its principal place of business in *(name)*  _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.     The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

The damages done by the defendants together exceeded $473,000+ per year in income, and more than $40,000+ cash expenses in medical bills, and more than $100,000+ in attorney fees

## III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the injunction or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each     claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if     needed.

A.     Where did the events giving rise to your claim(s) occur?

Primarily in Seattle, WA (often while I was a citizen of Oregon State), though incidents also occurred in Centralia, WA and the State of Oregon

B.    What date and approximate time did the events giving rise to your claim(s) occur?

October 2017 - Present on an Ongoing Basis

C.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

When escaping domestic abuse by an individual suspected to have a Cluster B Personality Disorder (narcissistic personality disorder or psychopathy), my children and I were systematically neglected, separated, I was wrongfully arrested, discriminated against on the basis of ADA disability and gender, harassed and repeatedly put back into abusive and dangerous situations before finally being involuntarily separated for the past year. Numerous individuals and organizations participated in the acts described in these claims, most notably Seattle Police Department, King County Court, Seattle DCYF, and more. Their negligent and discriminatory actions contributed to our ADA disabilities, which they subsequently discriminated against us for. See Attached Documentation for details.

I have an ADA disability and the attached doc is the best I can do — I need appointed counsel and ADA accommodations

## IV.    Irreparable Injury

Explain why monetary damages at a later time would not adequately compensate you for the injuries you sustained, are sustaining, or will sustain as a result of the events described above, or why such compensation        could not be measured.

My children and I are currently involuntarily separated and undergoing an unlawful trial without ADA accommodations. Monetary compensation at a later time will not repair the ADA damages, injuries and irreparable mother-child separation that is continuing to occur. The actions in the complaint have caused Brain and Nervous System Injuries, and are continuing to cause those injuries in the children and me. I have ongoing medical and mental health treatment, multiple daily prescriptions to alleviate physical pain and symptoms of brain and nervous system injuries– but they do not cover this extent of trauma. Ongoing sleep loss due to symptoms. I'm not receiving enough treatment because of the high cost of specialized care required, and the ongoing violations which continually re-injure me.

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

1. Appoint a civil rights attorney and ADA rights attorney to me
1. Appoint civil rights attorneys to each of my children
2. Issue an injunction for my children to be returned to me and the communication and financial barriers to be removed for mother-child contact
3. Issue an order for my children to be forensically evaluated by the Children's Center in Oregon
4. Issue an order for Alexander Murray to be psychologically evaluated by 3 experts in DV and Cluster B Personality Disorders
5. Issue an order for my children to be psychologically evaluated for ADA disabilities and psychological injuries from the crimes and negligences committed
6. Issue an order for the transfer of jurisdiction of the children and our family law and DV cases from the State of Washington over to the State of Oregon, Clackamas County, where there is adequate DV resources
7. Maximum punitive damages to the parties responsible for doing this to us
8. Award actual damages for medical care to-date, and medical care still required for my children and me (figure TBD, it is more than $40,000+ cash expenses paid to-date)
9. Award actual damages for the amount of income lost (~$473,000 per year) due to the parties' discrimination, abuse and negligence
10. Award actual damages for the value of my company that was coerced away from me and not returned (figure TBD, it is more than $1M and will need a valuation)
11. Order the parties to issue a public apology to my children and me, in writing in major news outlets, along with their steps they will take to ensure no children or women experience this in their organizations again. Order the parties to include a hotline to receive tips from other women and children who have experienced the same discrimination and neglect, so those individuals can receive relief also.
12. Order federal ADA penalties and fines to the organizations and individuals who participated in the group ADA discrimination and retaliation
13. Reserved for anything I forgot – I need legal counsel to review these matters and assist me, along with ADA accommodations

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable  opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the                requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:            12/14/23

Signature of Plaintiff

Printed Name of Plaintiff        Sara Murray

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

| Defendant List | | | |
|---|---|---|---|
| Defendant No. | 1 | | |
| Name | | King County Court | |
| Job or Title | | | |
| Street Address | | 416 3rd Ave | |
| City and County | | Seattle, King | |
| State and Zip Code | | WA 98104 | |
| Telephone Number | | 206-296-9300 | |
| Email Address | | | |
| | | | |
| Defendant No. | 2 | | |
| Name | | Judge Holloway | |
| Job or Title | | King County Court | |
| Street Address | | 416 3rd Ave | |
| City and County | | Seattle, King | |
| State and Zip Code | | WA 98104 | |
| Telephone Number | | 206-296-9300 | |
| Email Address | | | |
| | | | |
| Defendant No. | 3 | | |
| Name | | Judge Sean O'Donnell | |
| Job or Title | | King County Court | |
| Street Address | | 416 3rd Ave | |
| City and County | | Seattle, King | |
| State and Zip Code | | WA 98104 | |
| Telephone Number | | 206-296-9300 | |
| Email Address | | | |
| | | | |
| Defendant No. | 4 | | |
| Name | | Judge Whedbee | |
| Job or Title | | King County Court | |
| Street Address | | 416 3rd Ave | |
| City and County | | Seattle, King | |
| State and Zip Code | | WA 98104 | |
| Telephone Number | | 206-296-9300 | |
| Email Address | | | |
| | | | |
| Defendant No. | 5 | | |
| Name | | Commissioner Martin | |
| Job or Title | | King County Court | |
| Street Address | | 416 3rd Ave | |
| City and County | | Seattle, King | |

| State and Zip Code | | WA 98104 | |
| Telephone Number | | 206-296-9300 | |
| Email Address | | | |
| | | | |
| Defendant No. | 6 | | |
| Name | | Commissioner Eagle | |
| Job or Title | | King County Court | |
| Street Address | | 416 3rd Ave | |
| City and County | | Seattle, King | |
| State and Zip Code | | WA 98104 | |
| Telephone Number | | 206-296-9300 | |
| Email Address | | | |
| | | | |
| Defendant No. | 7 | | |
| Name | | Commissioner Furman | |
| Job or Title | | King County Court | |
| Street Address | | 416 3rd Ave | |
| City and County | | Seattle, King | |
| State and Zip Code | | WA 98104 | |
| Telephone Number | | 206-296-9300 | |
| Email Address | | | |
| | | | |
| Defendant No. | 8 | | |
| Name | | Ronda Bliey | |
| Job or Title | | ADA Office, King County Court | |
| Street Address | | 416 3rd Ave | |
| City and County | | Seattle, King | |
| State and Zip Code | | WA 98104 | |
| Telephone Number | | 206-296-9300 | |
| Email Address | | | |
| | | | |
| Defendant No. | 9 | | |
| Name | | Seattle Police Department | |
| Job or Title | | | |
| Street Address | | 610 5th Ave | |
| City and County | | Seattle, King | |
| State and Zip Code | | WA 98104 | |
| Telephone Number | | 206-625-5011 | |
| Email Address | | | |
| | | | |
| Defendant No. | 10 | | |
| Name | | Officer Vernon, Seattle PD | |
| Job or Title | | | |

| | | |
|---|---|---|
| Street Address | | 610 5th Ave |
| City and County | | Seattle, King |
| State and Zip Code | | WA 98104 |
| Telephone Number | | 206-625-5011 |
| Email Address | | |
| | | |
| Defendant No. | 11 | |
| Name | | Dr. Melanie English |
| Job or Title | | Parenting Evaluator |
| Street Address | | 1700 7th Ave, Ste 116 222 |
| City and County | | Seattle, King |
| State and Zip Code | | WA 98101 |
| Telephone Number | | 206-465-6112 |
| Email Address | | |
| | | |
| Defendant No. | 12 | |
| Name | | Sound Family Law, Seattle |
| Job or Title | | |
| Street Address | | 130 2nd Ave N, PO Bo 1614 |
| City and County | | Edmonds |
| State and Zip Code | | WA 98020 |
| Telephone Number | | 425-686-9795 |
| Email Address | | |
| | | |
| Defendant No. | 13 | |
| Name | | Stacie Naczelnik |
| Job or Title | | Attorney, GAL |
| Street Address | | 130 2nd Ave N, PO Bo 1614 |
| City and County | | Edmonds |
| State and Zip Code | | WA 98020 |
| Telephone Number | | 425-686-9795 |
| Email Address | | |
| | | |
| Defendant No. | 14 | |
| Name | | Bailey Walton |
| Job or Title | | Sound Family Law |
| Street Address | | 130 2nd Ave N, PO Bo 1614 |
| City and County | | Edmonds |
| State and Zip Code | | WA 98020 |
| Telephone Number | | 425-686-9795 |
| Email Address | | |
| | | |
| Defendant No. | 15 | |

| Name | | At Indaba | |
| Job or Title | | | |
| Street Address | | 2808 E Madison St #200 | |
| City and County | | Seattle, King | |
| State and Zip Code | | WA 98112 | |
| Telephone Number | | 206-860-3133 | |
| Email Address | | | |
| | | | |
| Defendant No. | 16 | | |
| Name | | Washington DCYF | |
| Job or Title | | | |
| Street Address | | 805 156th Ave NE | |
| City and County | | Bellevue, King | |
| State and Zip Code | | WA 98007 | |
| Telephone Number | | 425-590-3000 | |
| Email Address | | | |
| | | | |
| Defendant No. | 17 | | |
| Name | | Kelsey Marsh | |
| Job or Title | | DCYF | |
| Street Address | | 805 156th Ave NE | |
| City and County | | Bellevue, King | |
| State and Zip Code | | WA 98007 | |
| Telephone Number | | 425-590-3000 | |
| Email Address | | | |
| | | | |
| Defendant No. | 18 | | |
| Name | | Amber Alexander | |
| Job or Title | | DCYF | |
| Street Address | | 805 156th Ave NE | |
| City and County | | Bellevue, King | |
| State and Zip Code | | WA 98007 | |
| Telephone Number | | 425-590-3000 | |
| Email Address | | | |
| | | | |
| Defendant No. | 19 | | |
| Name | | Brandy Ganz | |
| Job or Title | | DCYF | |
| Street Address | | 805 156th Ave NE | |
| City and County | | Bellevue, King | |
| State and Zip Code | | WA 98007 | |
| Telephone Number | | 425-590-3000 | |
| Email Address | | | |

| Defendant No. | 20 | |
|---|---|---|
| Name | | Celestine Lanier-McClary |
| Job or Title | | DCYF |
| Street Address | | 805 156th Ave NE |
| City and County | | Bellevue, King |
| State and Zip Code | | WA 98007 |
| Telephone Number | | 425-590-3000 |
| Email Address | | |
| | | |
| Defendant No. | 21 | |
| Name | | David Starks |
| Job or Title | | McKinley Irvin Attorney |
| Street Address | | 1501 4th Ave #1750 |
| City and County | | Seattle, King |
| State and Zip Code | | WA 98101 |
| Telephone Number | | 206-397-0399 |
| Email Address | | |
| | | |
| Defendant No. | 22 | |
| Name | | Liz Hoffman |
| Job or Title | | McKinley Irvin Attorney |
| Street Address | | 1501 4th Ave #1750 |
| City and County | | Seattle, King |
| State and Zip Code | | WA 98101 |
| Telephone Number | | 206-397-0399 |
| Email Address | | |
| | | |
| Defendant No. | 23 | |
| Name | | Timothea Hanratty |
| Job or Title | | McKinley Irvin Attorney |
| Street Address | | 1501 4th Ave #1750 |
| City and County | | Seattle, King |
| State and Zip Code | | WA 98101 |
| Telephone Number | | 206-397-0399 |
| Email Address | | |
| | | |
| Defendant No. | 24 | |
| Name | | Lindey Androsko |
| Job or Title | | McKinley Irvin Attorney |
| Street Address | | 1501 4th Ave #1750 |
| City and County | | Seattle, King |
| State and Zip Code | | WA 98101 |

| | | |
|---|---|---|
| Telephone Number | | 206-397-0399 |
| Email Address | | |
| | | |
| Defendant No. | 25 | |
| Name | | Alexander Murray |
| Job or Title | | |
| Street Address | | 2929 1st Ave Ste C |
| City and County | | Seattle, King |
| State and Zip Code | | WA 98121 |
| Telephone Number | | 206-926-7800 |
| Email Address | | |
| | | |
| Defendant No. | 26 | |
| Name | | Kristin Mandrink |
| Job or Title | | |
| Street Address | | 2929 1st Ave Ste C |
| City and County | | Seattle, King |
| State and Zip Code | | WA 98121 |
| Telephone Number | | 206-926-7800 |
| Email Address | | |
| | | |
| Defendant No. | 27 | |
| Name | | Anna Killien |
| Job or Title | | Alexander Murray's Partner |
| Street Address | | 2929 1st Ave Ste C |
| City and County | | Seattle, King |
| State and Zip Code | | WA 98121 |
| Telephone Number | | 206-926-7800 |
| Email Address | | |
| | | |
| Defendant No. | 28 | |
| Name | | Joan Murray |
| Job or Title | | Alexander Murray's Mother |
| Street Address | | 2929 1st Ave Ste C |
| City and County | | Seattle, King |
| State and Zip Code | | WA 98121 |
| Telephone Number | | 206-926-7800 |
| Email Address | | |
| | | |
| Defendant No. | 29 | |
| Name | | Rodrigo Lopes |
| Job or Title | | |
| Street Address | | 2929 1st Ave Ste C |

| | | |
|---|---|---|
| City and County | | Seattle, King |
| State and Zip Code | | WA 98121 |
| Telephone Number | | 206-926-7800 |
| Email Address | | |
| | | |
| Defendant No. | 30 | |
| Name | | Griffin Deebach |
| Job or Title | | |
| Street Address | | 2929 1st Ave Ste C |
| City and County | | Seattle, King |
| State and Zip Code | | WA 98121 |
| Telephone Number | | 206-926-7800 |
| Email Address | | |
| | | |
| Defendant No. | 31 | |
| Name | | Washington State Bar Association |
| Job or Title | | |
| Street Address | | 1325 4th Ave Suite 600 |
| City and County | | Seattle, King |
| State and Zip Code | | WA 98101 |
| Telephone Number | | 800-945-9722 |
| Email Address | | |
| | | |
| Defendant No. | 32 | |
| Name | | Washington State Department of Health |
| Job or Title | | Board of Psychology |
| Street Address | | 111 Israel Rd SE |
| City and County | | Tumwater |
| State and Zip Code | | WA 98501 |
| Telephone Number | | 800-525-0127 |
| Email Address | | |
| | | |
| Defendant No. | 33 | |
| Name | | McKinley Irvin Law Firm |
| Job or Title | | |
| Street Address | | 1501 4th Ave #1750 |
| City and County | | Seattle, King |
| State and Zip Code | | WA 98101 |
| Telephone Number | | 206-397-0399 |
| Email Address | | |

**Foreword/Summary**

I am writing urgently to seek immediate federal court relief from an alarming public safety and corruption hazard that is plaguing the States of Washington and Oregon. This case is centered around the distressing events that have transpired against my two innocent minor children, G.E.M and C.M.M, aged 8 and 7, as well as myself, in both Washington State and Oregon. It is crucial to emphasize that a multitude of scientific studies have unequivocally demonstrated that the abhorrent experiences we have endured are not isolated incidents but are, in fact, a widespread issue affecting the majority of women and children who have reported similar crimes in family courts across the United States, including in Oregon and Washington. Given the gravity of the situation, it is imperative that the Federal Court addresses the issues outlined in my complaint promptly and decisively, putting an end to these ▇▇▇▇▇ crimes committed against survivors of domestic violence and coercive control.

As a survivor of domestic violence and an individual with an ADA disability resulting from the abuse inflicted upon me by my former spouse, Alexander Murray, I have been subjected to a multitude of abusive tactics. Furthermore, Mr. Murray has enlisted the aid of numerous accomplices, including an attorney who has actively facilitated his abusive behavior. Additionally, he has corruptly influenced various law enforcement and public court officials, further exacerbating the harm inflicted upon my children and me. It is essential to note that my case bears resemblance to other well-known cases, such as Tina Swithin (One Mom's Battle) and Catherine Kassenoff, as well as the ongoing protests by countless women across the nation under the #MeTooFamilyCourt movement.

Allow me to provide you with a detailed account of the events that have unfolded. Regrettably, I currently lack ADA accommodations and legal representation to assist me. However, the information provided below will shed light on the urgent need for ADA accommodations and legal aid. As an American citizen with a disability, I am entitled to special protections under the ADA, Title 42. Furthermore, I have enclosed an application for court-appointed counsel, which I kindly request you consider.

Jurisdiction

I anticipate that the federal court District of Oregon may question the jurisdiction in this case. Thus, I would like to elucidate the reasons why it is crucial for the District of Oregon to retain jurisdiction. The US District Court District of Oregon holds jurisdiction in this case and must maintain it due to the following reasons (to be further supplemented or amended by future appointed counsel):

Mr. Murray has employed a range of abusive tactics to inflict harm upon the author. These tactics include but are not limited to:

1

1. Physical Abuse: The author has been subjected to physical violence at the hands of Mr. Murray. This includes acts of assault, battery, and other forms of physical harm, causing significant distress and injury.

2. Emotional and Psychological Abuse: Mr. Murray has systematically engaged in emotional and psychological abuse, using tactics such as manipulation, gaslighting, humiliation, and constant derogatory remarks. These actions have had a severe impact on the author's mental well-being and emotional stability.

3. Financial Abuse: The author has been subjected to financial abuse by Mr. Murray, who has exerted control over their financial resources and limited their access to funds. This has resulted in financial instability and dependence on Mr. Murray, exacerbating the author's vulnerability and hindering their ability to seek legal assistance.

4. Coercive Control: Mr. Murray has exerted coercive control over the author, using various means to dominate and manipulate their actions and decisions. This includes isolating the author from their support network, monitoring their activities, and exerting unwarranted control over their daily life.

5. Recruitment of Accomplices: In order to perpetuate the abuse, Mr. Murray has enlisted the assistance of numerous accomplices, including an attorney who has actively enabled and facilitated his abusive behavior. This network of individuals has further amplified the harm inflicted upon the author and their children.

It is important to recognize that these tactics are not only detrimental to the author but also have a profound impact on their children, who have been exposed to a hostile and abusive environment. The author's plea for immediate federal court relief is a testament to the urgency and gravity of the situation they find themselves in.

**Intro**

I am writing for immediate federal court relief from a public safety and corruption hazard that is occurring in the State of Washington and into the State of Oregon. This case will focus on the events that have been happening to my two minor children, G.E.M and C.M.M, age 8 and 7, and me in Washington State and Oregon. *I also want to emphasize that numerous scientific studies have shown that what is happening to my children and me, is also happening to the majority of women and children reporting similar crimes in the United States in county family courts– including in both the State of Oregon and the State of Washington. It is in the public interest of all Americans, and in the best interest of my children and me for the Federal Court to address the issues in my complaint and put a stop to these crimes against domestic violence and coercive control survivors.*

I am a domestic violence survivor with an ADA disability from domestic violence by a former spouse, Alexander Murray, who has used multiple modes of abuse and who has enlisted numerous accomplices, an attorney to aid and abet him in his abuse, as well as corrupting numerous law enforcement and public court officials to harm my two children and me. My case is similar to other notable public cases: Tina Swithin (One Mom's Battle), Catherine Kassenoff, and the many other women currently protesting across the United States in the #MeTooFamilyCourt movement.

I am going to explain to you as best as I can what has happened to us. I do not have ADA accommodations, nor an attorney at this time to help me– the details below will inform you as to why I need ADA accommodations and an attorney to help me. As an American with a disability, I am entitled to special protections under the ADA, Title 42. I am also enclosing an application for court appointed counsel.

**Jurisdiction**

I anticipate that the federal court District of Oregon will question the jurisdiction for this case; I want to explain the reasons why it is important for the District of Oregon to retain jurisdiction. The US District Court District of Oregon has jurisdiction in this case and should maintain jurisdiction because of the following reasons (reserved for future appointed counsel to add/amend):

1. I am a resident of the State of Oregon, and have been for the past 5 years– the majority of the duration of this case.
2. King County Court in Seattle, WA has used the power of the State of Washington to continue to harm me while I reside in the State of Oregon. I attended court virtually, while seated in the State of Oregon, and so many of the violations described in this complaint happened to me while I was physically located in the State of Oregon.
3. The State of Washington has allowed the violations in this complaint to occur, and
4. The State of Washington has not protected me from these violations and damages despite numerous pleas to multiple oversight agencies.
5. I reported these matters to the Portland Branch of the FBI for their child abuse and public corruption units because I could not obtain law enforcement assistance in the State of Washington due to the actions of the organizations and individuals listed in this complaint; the Portland FBI Branch has a record of those reports.
6. The State of Oregon DCYF has investigated one of my children and me and has confirmed our reports of the abuse that is occurring. The King County Court, invoking the power of the State of Washington, and Washington DCYF's Seattle organization has retaliated against me for speaking with Oregon DCYF, and obtaining their protection.
7. The State of Oregon DHS Child Welfare has personally met and interviewed my child and me repeatedly and has awarded us the Domestic Violence Assistance Grant. The King County Court,

3

invoking the power of the State of Washington, has retaliated against me for speaking with Oregon DHS DV and Child Welfare divisions, and obtaining their protection.

8. The Oregon Department of Justice gave me membership in the State of Oregon DOJ Domestic Violence Address Confidentiality Program (Oregon DOJ DV ACP), which I am a member of, in present day. The King County Court, invoking the power of the State of Washington, has retaliated against me for being a member of the Oregon DOJ DV ACP.

9. The Children's Center forensic facility in Clackamas County is the only forensic investigation unit who has followed scientific procedures to assess the abuse that is occurring, and has personally conducted forensic interviews of one of my children and me– and has concluded that the abuse that we've reported is occurring. Equal forensic services have not been made available to us in Washington State.

10. The Lake Oswego Police Department has bodycam footage not publicly available that shows my child resisting officers and shows my child adamantly refusing to go with his abuser. I don't believe this footage is available to me by public disclosure request, due to department policy.

11. A Safe Place in Clackamas County, or Clackamas County Women's Services has firsthand experience working with and interviewing one of my children and me; equal services have not been made available to us in the State of Washington.

12. More than 5 sitting judges and commissioners in Seattle, King County, WA have committed ADA and gender discrimination on the bench. I do not believe I can receive a fair trial nor justice in the Seattle area nor in Washington State– even at the federal court there. Many of the judges know one another, and the district court judges have shown that they will violate federal law in conjunction with one another.

13. The judges/commissioners in Washington who have presided over my case have openly allowed harassment and intimidation by attorneys from McKinley Irvin law firm in Seattle, WA.

14. Even when I have reported ADA disabilities and injuries from the hostile and intimidating attorney behaviors in and out of court, the court has continued to allow the behavior, in violation of the court rules of conduct. At times, sitting commissioners/judges have broken impartiality and joined the attorneys in ridiculing or mocking me.

15. King County Court Judges/Commissioners have invoked the power of the State of Washington to take jurisdiction from the State of Oregon, despite the State of Oregon's forensic evidence, and then have dismissed my orders for protection that were granted by Clackamas County, without due process, and even when the DV perpetrator violated those protection orders. I have photographic evidence that he violated the protection orders in the State of Oregon; his protection order violations were waived by King County Court without due process.

16. I fear for my safety in the State of Washington.

17. The people who have been harming my children and me have an extensive professional and social network in Seattle, as well as significantly higher resources, particularly due to the crimes that they committed against me in coercing my money. I cannot afford to travel to Seattle, stay in Seattle, represent myself in Seattle and keep myself safe from them.

18. I have an ADA Disability that is worsened by exposure to the people and environment where my children and I are being harmed. Giving this case to the colleagues and neighbors of the people who are harming me, in the same city, would worsen my ADA disability and further erode my ability to care for myself, support myself and defend my children and myself.

19. The Washington State Bar is a statewide association, with many ties to attorneys and judges who were former attorneys. It is a conflict of interest to hand the case to individuals in Washington State, albeit in federal court, who have professional or personal relationships with the Bar and it's governing body or members.

20. For many years, the domestic violence and legal aid programs in King County and in Washington State have been defunct and largely unavailable to provide adequate support. Calls go unanswered and unreturned, offices are inaccessible, legal help is by a meager lottery with little chance of getting timely and adequate legal advice and safety support. Giving this case to

4

Washington District would ensure inadequate resources for me, which would result in another inadequate, unequal trial process without due process.

21. The District of Oregon has federal court rules that include preventing attorneys from harassing litigants with facial expressions, intimidating body language, inappropriate reactions, and other specific controls to prevent witness intimidation in the court. Washington State via King County Court and the Washington State Bar have repeatedly acted out the doctrine "there's no rule against being mean" and have allowed attorneys from McKinley Irvin to intimidate and harass me repeatedly and severely in Washington courts, without penalty, and despite court rules that state that attorneys cannot harass litigants. Attorney intimidation and harassment in Washington State has contributed to my ADA disability and has worsened it to the point that I cannot medically withstand court hearings. I experience debilitating disability symptoms in court proceedings in Washington State and have to take an amount of prescription medication for the symptoms that disables me from testifying and defending myself; also, the courts in Washington have been so traumatic that most prescription medications, even in high dosages, cannot cover the disability symptoms in the moment nor for months after each hearing– putting me at serious medical risk.

## Overview - should this area have the timeline, or be in timeline format?

I want to note for the Federal judge: this part of my filing is highly traumatic for me. The type of ADA disability that I have from this trauma has serious health symptoms that are activated by re-calling the traumatic events. I am including a scientific study to show your honor that people with my disability cannot recall the traumatic events using only memory recall; scientific studies show that people with my disability have additional areas in the brain that have been injured activate upon traumatic recall. I cannot re-tell what has happened to me without suffering additional pain, distress and health problems. I am including the overview below to the best of my ability by myself. To have equal due process, I need an attorney appointed to me and I need forensic psychologists with expertise in DV, coercive control by Cluster B style abusers; I need these professionals to take my testimony for the court, compile a specific timeline from the factual evidence, and to pull the relevant evidence and data from the files of the people who did this to me, to show the federal court– in a way that does not further injure me or put my health at risk. If I have not written it here, it is only because I need professional assistance and ADA accommodations to wade through this subject.

The following is occurring in the United States of America, to my children and me:

1) King County Family Court in Washington State is conducting an unlawful series of child custody hearings and a child custody case trial that:
    a) Denied all ADA accommodations and attorney counsel to a person with an ADA disability (who was mentally unable to invoke the ADA at the time, due to disability, but who reported to the sitting commissioner the descriptive need for ADA invocation) in a domestic violence protection order hearing, resulting in the court coercing the individual into a futile effort, in violation of Title 42 USC 12203(b)
    b) Allowed ADA discrimination to occur by judges, commissioners and opposing counsel to occur openly in public court in all hearings and trial proceedings, in which ADA discrimination and HIPPA violations did actually occur in front of a public audience and did actually inflict ADA public humiliation..
    c) Denied all ADA accommodations and attorney counsel to a person with an ADA disability in a set of consecutive emergency custody order hearings, resulting in the court coercing the individual into a futile effort, in violation of Title 42 USC 12203(b).
    d) Permitted a sitting judge/commissioner to openly mock the ADA disability and publicly discuss the ADA disability with opposing counsel in a demeaning way, in front of the

individual and public during hearings, despite invocation of ADA law and also pleas by the ADA individual to stop.

e) Coercion, repeatedly, of testimony, under threat of immediate punishment, by a sitting KCC judge/commissioner against an individual with an ADA disability who was answering testimony truthfully and accurately, and to the best that their ADA disability permitted, given the unlawful denial of ADA accommodations and counsel representation. Judicial badgering of the ADA individual to change her testimony to the judge– breaking judicial impartiality– when the ADA individual was answering the judge truthfully, accurately, and in good faith.

f) Denied all ADA accommodations and attorney counsel to a person with an ADA disability in the adequate cause hearing, resulting in the court coercing the individual into a futile effort, in violation of Title 42 USC 12203(b). The court held the adequate cause hearing unlawfully, and then approved the subsequent trial process unlawfully.

g) Denied all ADA accommodations and attorney counsel to a person with an ADA disability in the pre-trial proceedings and discriminatory evaluation processes, resulting in the court coercing the individual into a futile effort, in violation of Title 42 USC 12203(b)

h) Retaliated against an individual invoking federal ADA protections by revoking phone calls and free parent-child access, removing legal rights without adequate and equal due process. The judge told the ADA individual initially to record phone calls with the children; when the ADA individual agreed, and said Oregon State law allowed for that and that the lawful evidence existed in support of what the judge was asking for– the judge became angry with the ADA individual and retaliated by imposing financial barriers on the ADA individual that formed insurmountable communication barriers for mother-child phone contact. The court later revoked mother-child phone calls completely, with zero grounds.

i) Erected financial and legal barriers, as well as communication barriers, to prevent the ADA individuals and survivors from the rights, benefits and privileges lawfully theirs.

j) Appointed an unqualified individual as guardian ad litem (GAL), who could not adequately diagnose and evaluate the situation, and who did then join in the same ADA discrimination together with the other parties.

k) The GAL appointed by the court proceeded to engage in ADA discriminatory practices and proceedings, despite being informed by the ADA individual who invoked the ADA and requested ADA accommodations.

l) Emotionally and psychologically tortured a DV survivor by repeatedly placing dependent children in the majority and/or sole custody of an active DV abuser and preventing functional access to mental health, medical and all other protective services, and then emotionally abusing and legally punishing the mother for exhibiting ADA disability symptoms as a result.

m) Lacks adequate and protective reporting avenues for abuse survivors

n) Lacks qualified investigation of domestic violence, child abuse, coercive control and Cluster B style abuse campaigns– and

o) Demonstrates a willful commitment to ignoring the existence and criminal impact of acting, not-yet-caught criminals who are displaying symptoms of undiagnosed Cluster B Personality Disorders (Narcissistic Personality Disorder, Psychopathy), and who use covert multi-faceted abuse strategies to torture, control and injure their spouses, former spouses and children.

p) Demonstrates a willful commitment to ignoring Cluster B-symptomatic criminals' behavioral patterns of manipulating law enforcement, DCYF, and public judicial officials and staff into group abuse and discrimination campaigns against their victims, including

manipulating and collaborating with authorities to build defamatory and discriminatory false evidence against survivors who are trying to escape.

q) Specifically and explicitly prevents child abuse and DV survivors from obtaining qualified investigators through the court, law enforcement and DCYF

r) Violates psychological scientific practices as defined by the American Board of Psychology,

s) Denies the admission of psychological experts into the court decision-making

t) Places child abuse survivors in the sole custody, power and control of the person they are reporting abuse from

u) Prevents access to mental health or medical care for child abuse survivors, independent from the person they are reporting abuse from

v) Refuses forensic reports from qualified child abuse experts that have findings of child abuse by the individual that the court has assigned majority and emergency custody to

w) Inflicts cruel and unusual punishments on child abuse and DV survivors, that have the effect of serious criminal punishments in terms of the severity and magnitude of damages inflicted upon the punishee, for reporting violations of law and petitioning for government redress.

x) Accuses an individual with ADA disability of psychological abuse of her minor children, and inflicts serious punishment to mother and children without due process, despite years and years, and hundreds of requests by the individual with an ADA disability for access to mental health and medical care for mother and child for relief. The court denied all avenues for psychological health for mother and children, refused forensic reports showing that mother and children were truthfully reporting abuse and seeking mental health care and medical care in good faith, and the court is now trying the mother for psychological abuse without merit and against good faith and common sense.

y) Discriminates against the mother on the basis of gender, on the misogynistic myth that women lie in custody courts about abuse, without ever conducting adequate, equal forensic evaluation and adequate, equal due process to determine the specific facts of this specific case. All US scientific studies have concluded that family courts severely misestimate women reporting DV and child abuse, and punish truthful and accurate reporting much more than they provide adequate investigation and protection.

z) Discriminates against the mother on the bases of ADA disability resulting from domestic violence, coercive control, and post-separation abuse in a Cluster B pattern of covert emotional, financial and legal abuse strategies by Alexander Murray. The court does not allow the mother to exhibit anger, distress, fear, pain, brain injury, verbal and psychological self defense necessary for surviving this abuse, and other difficult emotions; the mother is punished for exhibiting any natural human emotions indicating the ADA disability injury that is being caused by these events– this suppression worsens the ADA disability and threatens the life of the mother.

aa) Discriminates against the children on the basis of disability of minor, ignoring their outcries and symptoms because they are small, powerless, vulnerable and unable to adequately articulate their injuries.

bb) Has resulted in the perception of a "free pass" for unlimited crimes by Alexander Murray, David Starks and their abuse accomplices– which the abusers have cashed in on, making millions and hundreds of thousands of dollars off of the abuse, respectively.

cc) Has resulted in damages to 3 survivors that include ADA disability injuries, physical injuries, financial damages in the millions of dollars in coerced property and income, intangible damages to professional and personal reputation, lifelong psychological injuries that heighten the children's risk for additional victimization by additional abusers in the future, and substantial financial damages to taxpayers who have had to finance negligent law enforcement and judicial malpractice.

dd) Presenting evidence of, and declaring, my PTSD disability as evidence of "abusive use of conflict" and ignoring all psychologist findings that unanimously disagreed, and categorized my statements and true, accurate, and indicative of PTSD resulting from domestic violence abuse.

ee) Continuing to sanction me with minimal parenting time and a court-ordered parenting supervisor without cause, despite forensic evidence and mental healthcare professional statements stating that Alexander Murray is committing child abuse and DV, and that I have PTSD and am fully psychologically fit to parent.

ff) At no time rendering me assistance or accommodation for my ADA disability, despite my visible and obviously apparent distress and damages to my life

gg) Spreading rumors and recruiting numerous people to join in and engage in abusing me for my disability, and to assist in removing my children (action leg by Alexander Murray and adopted by individuals and organizations in this filing).

hh) Parenting evaluator Dr. Melanie English failing to evaluate the father for a Cluster B Personality Disorder, even when expressly asked– she responded that her reports "contain mistakes" and made zero attempt to fix them.

ii)  The court has not scrutinized the mental health of the children's father (the abuser) with nearly the same level of scrutiny. He has not been ordered to undergo a psych eval and has not been screened for a Cluster B personality disorder. All mental health professionals who have treated me for my ADA disability have warned me that the children's father is a high safety risk and needs to be screened for a Cluster B personality disorder, psych eval and DV assessment. He has engaged in non-fatal strangulation of me in Jan 2012, and forensics by the Children's Center indicate that he may have engaged in non-fatal strangulation (neck squeezing) of our 6 year old son. Non-fatal strangulation acts are the highest physical indicator of future fatal violence by an abuser.

jj)  King County court is imposing criminal-like penalties on me specifically for my ADA disability, without the option of a jury, without forensic evidence to support punishing my ADA disability and without DCYF due process for "false allegations" findings where I would be given a chance to demonstrate evidence of my ADA disability and show that I am a DV survivor, testifying truthfully and accurately and that my claims are medically supported.

kk) King County Court, WA DCYF, and parenting evaluator Dr. Melanie English are not using timely, videotaped forensic interview methods nor are King County Seattle PD following forensic questioning standards by qualified psychologists to avoid testimony contamination or distortion. Without forensic questioning standards and scientific, repeatable and reproducible, videotaped interviews, there is no way to prove or rebut sloppily, erroneously and unprofessionally collected "evidence", even when DCYF and Dr. Melanie English openly admit the presence of their mistakes and errors in their reports. King County Court is committed to misunderstanding or punishing all of my testimony attempting to correct the record, provide evidence of my ADA disability, and prove that the children and me are being abused and that I am being punished for an ADA disability while the abuser is gaining power and control, and custody.

ll)  Commitment to ignoring the detrimental effect any and all of this discrimination was having on the children and me, and further ignoring and punishing me for displaying symptoms of my disability and damage, and forcing me to engage in years of futile attempts to obtain relief from the discrimination, abuse and damages—only to incur additional discrimination, abuse and damages and worsen my disability—only for the cycle to begin again and be punished again for the same.

mm)    Alexander Murray preventing court-ordered mother-child phone contact on hundreds of occasions, and in-person contact on multiple occasions, due to Alexander abusing us and then discriminating against my disability, most typically when I was symptom-free;

8

falsely stating that I was experiencing and demonstrating symptoms of my disability when I was not, in order to withhold mother-child contact against court order. In fact, Alexander Murray's abuse became most severe when I was most PTSD symptom-free or when I defended myself, in order to damage and disable me.

nn) Humiliation by Judges and Commissioners during court proceedings, in front of the abuser and abusive opposing counsel, with unnecessary and inaccurate comments minimizing my condition, accusing me of exaggerating or lying about my disability and its cause, referring to my symptoms with degrading and villainizing language, shaming me, blaming me for my PTSD disability, penalizing me for using King County Prosecutor's Office Victim's Advocate language and statements to communicate to the abuser to stop.

oo) Has resulted in the ongoing public corruption of American public government, and an erosion of public trust in the integrity and credibility of American government which has helped to fuel civil unrest and  the #metoofamilycourt movement to petition for the redress of grievances by thousands of survivors of family court public corruption and negligence in the US. Protests are ongoing in all 50 states. States like California have been responsible, and are addressing the protests and passed Piqui's law to come into compliance with the federal VAWA Act and Kayden's Law.

pp) Created public safety hazards that threaten the lives and well-being of Americans:
    i)     The actions above by KCC statistically increase the risk of murder
    ii)    The actions above by KCC statistically increase the risk of maternal suicide
         (1) Post Traumatic Stress Injury (PTSD/PTSI) is an injury to the brain and nervous system. Repeated injuries to the same parts of the brain and nervous system can, and statistically do, result in maternal suicide, and/or disease of the injured areas and associated organ systems that lead to death

qq) Destroyed any functioning checks and balances in law at the local, county and state level for crime victims experiencing these types of crimes.

rr) Retaliated directly and obviously against an individual with an ADA disability for petitioning for government redress of grievances.

ss) Denied outright federal ADA and United States of America Civil Rights

tt) Violated the parens patriae doctrine: Where the court acted as the parent of both the children and their mother, the court failed to adequately determine the real needs of the children and mother, failed to identify Cluster B style abuse, and instead of protecting children G.E.M, C.M.M. and their mother and upholding the court's responsibility to accurately understand family issues and resolve them appropriately…sought to crush the mother financially, emotionally, and through physical disability and forcibly separate the children from their biological mother and primary psychological attachment figure.

uu) On at least one occasion, Seattle Police Department wrongfully arrested the mother when the mother called 911 for help physically escaping the DV abuser who was in the act of committing DV against the children and mother in a moving vehicle. Mother was not charged. Mother has zero criminal, drug, alcohol, neglect or abuse records of any kind.

vv) Preceeding wrongful arrest of the mother, Seattle PD Officer Vernon did lead the DV perpetrator Alexander Murray in questioning, and did supply false answers to Alexander Murray to repeat back to the officer multiple times until Alexander Murray did change his story and agree to Officer Vernon's leading questioning. Axon Bodycam evidence proves that Officer Vernon and fellow officers were in complete confusion at the scene (which is a key indicator to law enforcement that a Cluster B style abuser is present), and Officer Vernon chose to "fix" testimony to end the call, in a gender-discriminatory and ADA biased fashion. While mother was not charge, mother suffered a wrongful night in Seattle detention while the children were given to the active abuser, and the abuser

proceeded to use the arrest to coerce the mother out of time with the children, custody, due process, equal assessment, professional clients, friendships and social relationships, company ownership of shares valued in the millions since, and of income of approximately $473,000 per year.

ww)   On at least one occasion, the Seattle Police Department failed to arrest the DV perpetrator Alexander Murray, when he performed a "swatting" style call. Alexander Murray called Seattle PD and falsely reported the mother for interstate kidnapping in advance of a regularly scheduled, court-ordered pickup of the children. Alexander Murray did the "swatting" style incident as an act of extortion to scare the mother, after threatening the mother that he would do so if she did not give him her Oregon address. Mother had informed him that she was not disclosing her address for safety reasons and subsequently obtained Oregon DOJ DV Address Confidentiality Program status. The Court, attorneys, and Alexander Murray continued to harass and punish the mother for taking safety steps to anonymize her address, per DV survival recommendations in both states.

xx)   Seattle PD and Seattle DCYF refused to forensically investigate claims by the children G.E.M. and C.M.M. of physical abuse by Alex Murray, using qualified DV experts familiar with Cluster B style perpetrators. Seattle PD and Seattle DCYF relied on false statements from Alexander Murray accusing mother of various ADA disabilities that mother does not have, and then proceeded to engage in ADA discrimination to not believe the mother words, expressions and testimony and not ever bring in experts to properly investigate the case.

yy)   Seattle DCYF failed to read and accurately report a doctor's report evidencing abuse by Alexander Murray, and wrongfully reported to King County Court that mother had made false allegations and coached the child. When mother's attorney corrected the record at DCYF, DCYF acknowledged its mistake, but then did not take adequate steps to correct the record to the court– resulting in years of bias, discriminatory, abusive treatment of the mother by King County Court and Seattle PD– worsening over time–and total exclusion from law enforcement, DCYF and court protection.

zz)   Discriminated on the basis of gender by applying unequal evaluation measures between the man and woman in the case. Evidence provided by the woman was discounted, devalued and dismissed, even when of scientific quality and factual certainty. Evidence provided by the man where the witness was paid by the man, the testimony conflicted, the evidence was manufactured from gossip spread through groups of people, the evidence was interpreted by the DV abuser himself and his opinion and untruthful characterization of the evidence was held above unbiased forensic mental health experts and mental health professionals– many of whom were paid by the State of Oregon, independently from either parent. Failures by the man to adhere to the parenting plan and malicious acts were waived from penalty by the court and police, while the mother was held accountable and punished for actions she did not take, or were misconstrued by non-experts and non-professionals to unduly demonize and pathologize normal, appropriately protective maternal behavior, ADA disability, defense of other with disabilities of minority, and self defense.

aaa)   The Washington State Bar, when reported on the behavior of the attorneys in the case (who took improper steps, intimidated and harassed me, openly discriminated on the basis of gender and ADA disability, and took abusive actions towards me, and threatening me that they would remove my children from me for us reporting their client's abuse) failed to carry out equal due process and equal evaluation. They also failed to use subject matter experts to investigate my report.

bbb)   The Court, Seattle PD, Attorneys, the WA Commission for Judicial Conduct, the Washington State Bar, and Seattle DCYF ignored my attempts to resolve the matter. I

proposed equal evaluation by a DV and Cluster B expert panel of mental health professionals. I volunteered to submit to additional forensic interviews by an expert panel. All of the organizations refused to engage in any efforts to remove ADA barriers, understand the damages they were doing to us, and to take any meaningful steps to attempt resolution.

ccc)    Failure to forensically and appropriately assess my child C.M.M. for sexual abuse by Alexander Murray. C.M.M.'s behavior indicated severe distress and psychological ADA disability. Self-identified Washington DCYF agent Brandy Ganz did come to the State of Oregon and assess C.M.M. for behavior problems, suspected child sexual abuse, and then left the assessment and did not report child sexual abuse concerns. C.M.M. disclosed the child sexual abuse, including oral rape and other sexually abusive behaviors, right after Brandy Ganz left the assessment; I immediately called Brandy Ganz, but she refused to return and did not report the child sexual abuse. Instead, she hired an unqualified individual days later, who later improperly and inappropriately interrogated C.M.M. and contaminated forensic testimony. Brandy Ganz did not follow DCYF or state mandatory reporting laws. Seattle DCYF told me to teach C.M.M., recently turned age 5, how to request his own rape kits at school in the future "if it happens again". All organizations failed C.M.M.

That is the amount I can report to the court right now by myself. I reserve the right to add additional descriptions to this filing; I need legal counsel and ADA accommodations, and it is a futile effort for me to write my own court filings– I do not yet have another option that I can find nor afford. I need counsel and ADA accommodations to compile the evidence and descriptions of what is happening to us.


**Negligence in Identifying and Protecting from Cluster B-pattern Criminal DV Perpetrators**
This case is multi-faceted. One of the main issues in this case is that Seattle Police Department, Seattle DCYF, King County Court and King County Court agents such as parenting evaluators, court staff, and appointed GALs do not recognize, nor have in place, protective systems for victims being targeted by Cluster B personality disorder style attackers.

Cluster B personality disorders, as related to this case, refers to individuals with mental and behavioral patterns indicative of narcissistic personality disorder and psychopathy. Clinically, Cluster B encompasses a wider variety of mental illnesses. However, these 2 subcategories of Cluster B are most relevant to the concerns in this case.

Individuals with Cluster B Personality Disorders or displaying strong narcissistic behaviors are, by definition, highly likely to lie, manipulate, take extensive measures to conceal crimes, reverse victim and offend, manipulate law enforcement and authorities, and take other measures to continue to attack their victims in a covert, concealed manner that makes evidence and investigation difficult and confusing. It is the responsibility of organizations like Seattle PD, Seattle DCYF, King County Court to
1.  Acknowledge the existence of Cluster B criminal minds and criminal actors
2.  Develop a system for victims to report crimes by suspected Cluster B individuals
3.  Remove communication barriers for surviving individuals with ADA disabilities from Cluster B abuse and coercive control
4.  Develop a forensic evaluation method to determine crimes by suspected Cluster B individuals
5.  Protect survivors from Cluster B symptomatic criminals

6.  Protect government agents and employees from corruption by suspected Cluster B perpetrators
7.  Correct administrative mistakes that falsely accuse survivors of wrongdoing
8.  Refrain from punishment of reporting survivors
9.  Refrain from retaliation against reporting survivors with ADA disabilities
10. Uphold restraining orders for survivors against Cluster B style abusers
11. Prosecute and incarcerate Cluster B style abusers

Targeted, covert and/or overt, multi-faceted abuse or abuse-by-proxy of a victim by an individual who is symptomatic of Cluster B mental illness, or who has engaged Cluster B style abuse patterns, can and does result in ADA disabilities in the victims. In my case, it resulted in injury to my brain and nervous system.

Washington State, and the organizations listed in this filing,  have no reliable method for DV abuse survivors to effectively report and get safety, protection and relief from Cluster-B Style (narcissistic personality disorder, psychopathy, antisocial personality disorder, etc) covert abusers, abusive attorneys, and/or abusive judges, commissioners and law enforcement.

DV survivors who experience ADA disabilities as a result of DV abuse and legal abuse face open discrimination in court by attorneys and judges/commissioners and perpetrators, as well as substantial communication barriers and barriers to equal access to Washington courts and equal assessment and due process that would identify Cluster B-style abusive judges and commissioners, attorneys, and their abusive clients.

Washington family law attorneys are aware of the substantial discrimination and post-separation abuse DV survivors face, and are negligently counseling their clients on dangerous and perjurious strategies to attempt to avoid the systemic abuse and discrimination, instead of correcting legal procedure in Washington state. This negligence is exposing DV survivors to further risk of substantial financial, mental and bodily harm, including death.

Some Washington family law attorneys are exploiting the discrimination and abuse of DV survivors for substantial attorney's fees, without intent or ability to help the DV survivors, and without regard to the financial and ADA disability damage of the survivors.

Some Washington family law attorneys are exploiting the discrimination and abuse, and collaborating in DV abuse with perpetrators to harm DV survivors and financially profit from the abuse (particularly law firm McKinley Irvin, particularly attorney David Starks).

#METOOFAMILYCOURT – The nationwide movement by DV survivors, particularly Cluster B-style domestic violence survivors to bring attention to the statistics of discrimination and abuse of women in family court who, together with their children, report abuse by fathers exhibiting Cluster B behaviors and traits during campaigns of domestic violence and coercive control.


## Law Enforcement, CPS and Judicial Negligence

Seattle PD law enforcement is not trained to detect Cluster B on DV calls. They are not trauma-informed. On my 911 call in 2017 for DV help, they became confused. I was also confused and unable to advocate for myself due to my ADA disability that I was not conscious of, at that time; it was my first 911 DV call due to my fear that I would not be believed over the abuser and I was right. Confusion is the common human response to the presence of an

12

individual with Cluster B who is manipulating and lying. In addition, Seattle PD believed I had an ADA disability due to comments made by the abuser insinuating that I had mental health symptoms that I did not— and police did not give me ADA accommodations nor closer evaluation.

CPS believed I had an ADA disability due to specific documented comments made by the abuser alleging that I had a different ADA disability that I do not. The abuser told COS that I have Bipolar— I do not. CPS took the abuser's information as fact, and I was not given ADA accommodations nor closer evaluation. The abuser was not subjected to the same ADA disability scrutiny that I was.

**Burden of Evidence - Futile Effort**

The systemic failure by King County to have any systems and safeguards in place for me to obtain the proper and adequate safety, help, protection and evidence documentation while experiencing ADA disability, Cluster B-style DV and coercive control has created an insurmountable ADA barrier. It is a futile effort for me to participate in King County Family Court, because I can never meet the burden of proof and evidence in their discriminatory system now; they have denied me any means of evidence collection, due process, and unbiased judgement from 2017-present. They have denied the children and me any adequate, qualified mental health experts who could provide accurate, expert, firsthand evidence and testimony about what had happened to us and is continuing to happen to us. We do not have a way out of the abuse and discrimination that's causing ADA disabilities in all three of us; participating in any further interaction with the discriminating parties will foreseeably worsen our ADA abilities. We need immediate relief, reunification, and total separation from the abusing and discriminating parties— permanently.

**Evidence Loss due to Discrimination**

At multiple points in the case from 2017-present, evidence was lost due to discrimination. For example, in 2018, abuser Alex Murray recorded a zoom call of himself engaging in verbal abuse and coercive control during a board meeting for a Voglio Marketing— our co-owned company. Alex was coercing each of my votes during the board meeting and verbally abusing me if I voted by my own decision. The board voted determined significant sums of money and major business decisions. Discrimination by Judge Whedbee allowed that evidence of abuse and coercion to be hidden and possibly destroyed by Alex— and disabled me from proving serious financial abuse in court. Alex coerced my more than $400,000 per year post-divorce income from me and absorbed my income into his own income— nearly doubling his own and reducing mine to zero. The significant disparity in income enabled Alex to pay McKinley Irvin and witnesses to manipulate many, many instances of "evidence" collection and "interpretation"that I could not afford to keep up with, nor could I address the aggressive legal and financial abuse while suffering growing ADA disability.

**Adequate Representation - Futile Effort**

All family law attorneys consulted in the Seattle area are aware of the discriminatory and negligent practices of King County Court, particularly in relation to DV and abuse survivors. Attorneys frequently adamantly counsel clients not to disclose DV to the court, including in official court documentation, to "protect" clients from KCC discrimination— which seems to be

13

more feared by attorneys than the risk of DV itself. It is a futile effort to obtain adequate legal counsel in King County; even if the lawyer were competent, they would not be able to overcome the ADA discrimination barriers in KCC.

In addition, King County has not provided adequate resources for DV survivors with ADA disabilities. The DV Legal Clinic is frequently full and by-lottery, and no attorneys are available for court representation anyway. For people with ADA disabilities who have been disproportionately economically damaged, the free public Legal Clinic options are full, have longer wait times than the court schedule allows, and no attorneys have been made available for court representation.

KCC is running a discriminatory system where the most damaged litigants cannot protect themselves against KCC or abusive opposing parties.

**Jurisdiction & Parens Patriae**

Washington State and King County Court can no longer have jurisdiction or "parens patriae" over the children and me, due to the magnitude of abuse, negligence, neglect, discrimination, retaliation and coercion that they have done to the children and me. Because KCC was operating as our parent, under parens patriae, King County has committed domestic violence and coercive control against the children and me and is subject to, and deserving of, Washington 191 restrictions and penalties.

**Risk of Revealing Damages to a Cluster B-style Abuser**

The primary abuser, Alex Murray, has exhibited Cluster B symptoms that included physical violence, interest in planning to harm and then actually harming me, and visible enjoyment of specifically committing harm against me and confirming harm (sadism). Each time I am coerced into the futile ADA effort of revealing the harm that has been done to me, and confirming to the abuser that his harm has been effectively carried out, the abuser receives a neurological "reward" for his abusive behavior. When the abuser continues to feel "rewarded" for abusing me, he continues to diversify and multiply his efforts to cause me pain and suffering in any way available to him— like a drug addict, he seeks a new brain "high" from a new and better harm to me. I have worked diligently to reduce his abilities to "land" harm on me, but King County Court continues to enable him to abuse and control further. Me writing this report and further revealing this harm will "reward" him and incentivize him to continue; being coerced into this process to defend the children and me, knowing that he's sadistic and will "benefit" from this, exacerbates my ADA disability now and in the future, and raises the children's and my risk of further abuse and threat of violence.

**Americans with Disabilities Act (ADA)**
Title 42 - The Public Health and Welfare

Chapter 126 - Equal Opportunity for Individuals with Disabilities

Sec. 12101. Findings and purpose

(a) Findings

The Congress finds that—

> (1) **physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination**; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination;

> (2) historically, **society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;**

> (3) **discrimination against individuals with disabilities persists in such critical areas as** employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and **access to public services;**

> (4) **unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination;**

> (5) **individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of** architectural, transportation, and **communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;**

> (6) census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally;

> (7) the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and

> (8) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.


ADA Title 21 USC 12132 DISCRIMINATION

"Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

ADA Title 42 USC 12203(a) RETALIATION

15

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

ADA Title 42 USC 12203(b) INTERFERENCE, COERCION, OR INTIMIDATION

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

**My ADA Disability**
I have an ADA disability. I feel coerced to reveal the details of my ADA disability, in violation of my HIPAA rights, because I cannot protect myself and my children against discrimination and abuse on my own. I need Federal Court to understand what is occurring, so that Federal court can protect my children and me.

I have post traumatic stress injury (PTSD or PTSI), which includes injuries to my brain and nervous system. One traumatic event can produce injuries to the brain and nervous system, however in my case, there were many, many traumatic events, led and orchestrated by a DV abuser, Alexander Murray. He orchestrated and enacted a complex abuse strategy, involving many different types of abuse, and later involved many other people– including some law enforcement, DCYF, and judges and commissioners– to assist him in abusing, injuring and controlling my children and me, and coercing me out of substantial amounts of money and property that were lawfully mine, and that money was intended to use to raise my children and provide for my children and me.

Because of my injuries, I have trouble retelling the traumatic events for court, or for anyone. When recalling the events or being re-exposed to the people who hurt my children and me, I experience debilitating PTSD symptoms that risk my health and pose serious communication barriers for me; the communication barriers are multiplied by both intentional and negligent communication barriers that have been erected by the State of Washington and King County, who have demonstrated a commitment to erecting and maintaining insurmountable communication barriers for survivors of domestic abuse and coercive control, particularly those individuals who have developed an ADA disability as a result of the abuse and discrimination. When faced with the abuser, or those who have helped him or are continuing to help him, I exhibit substantial PTSD symptoms.

I require ADA accommodations, skilled psychological professionals, and PTSD medication to help me safely re-tell what has happened to my children and me, and what is continuing to happen. If I have not listed all of the details to my complaints here, it is only because I am re-telling this as best as I can without robust ADA accommodations and am struggling through the subject matter. I reserve the right to add in details that I have not included here, as I obtain ADA accommodations and have support in properly writing my declaration and processing evidence for inclusion here.

The injuries I am suffering to my brain and nervous system were caused by the following events and occurrences:
1. Domestic abuse by Alexander Murray including physical abuse, emotional and verbal abuse 2012-2017:

    a.   Non-fatal strangulation in 2012: Alex choked my shirt collar around my neck in a vehicle (non-fatal strangulation is the #1 DV indicator of future fatal violence by a DV perpetrator)

    b.   Tackling me in 2013 and applying his full body weight on top of me, which caused so much pressure to my head that I feared breaking my skull against the hard floor.

    c.   Throwing an object at me in 2016 which hit my face and neck, causing marks to my neck and stinging it.

    d.   Driving erratically in such a way with my babies in the car in October 2017, so as to cause me fear of imminent physical harm to my children and to me and then screaming at me to hit him while my face was vulnerable and recovering from facial surgery, and then twisting my arms when I tried to obtain the key FOB and throw it from the car.

    e.   I am providing a DV List with the rest of the incidents and details. It is traumatic to re-tell.

2. Financial abuse and coercive control beginning in December 2014 - present

    a.   Alex coerced majority ownership of my solo-founded, sole-owned company for himself and his friends while I was ill in pregnancy, in the hospital, saving the life of my unborn child at approximately 8 months pregnant. Alex brought his phone to the hospital maternity ER unit with a Docusign document to sign my company over to him to "temporarily care for my company while I was ill and then return it to me once I was better". I was under sedative medications and medications which altered my ability to be clear-headed and make informed decisions for myself. I do not even recall whether Alex signed the Docusign from my devices for me, or whether I signed under his watch. My focus was saving the life of my unborn baby, surviving the suffering of obstetric cholestasis (liver failure in pregnancy– life threatening to the baby at full-term), and I did not know the terrible things he would do to us. He took control of my company and my job, did not ever give them back in full, and abused the power and control to conduct a multi-year campaign of coercive control and financial abuse that would ultimately destroy my career, my professional reputation and my income.

3. Domestic abuse by Alexander Murray including intimidation "dog-whistling" back to physical abuse, emotional and verbal abuse, ADA discrimination and ADA abuse, and legal abuse, in which he began using law enforcement, DCYF and King County Court Judges and Commissioners to assist him in the same.

4. Emotional and verbal abuse, ADA discrimination and ADA abuse, and legal abuse by Alexander Murray's attorney, David Starks, along with additional attorneys at Stark's firm, McKinley Irvin in Seattle, WA. David Starks aided and abetted Alex Murray in a multi-year campaign of post-separation domestic abuse and coercive control.

5. Abuse accomplice and emotional abuser, Kristin Mandrink, a former nanny, misused her psychological training and gave me psychological advice (without a license to practice in Washington State) on how to handle Alexander Murray's abusive behavior toward the children and me, which she did actually witness, observe, and take multiple steps to help prevent his abusive and controlling behavior towards the children and me. Kristin later accepted a higher salary from Alexander Murray, began to work for him, and then changed her story, pretended she did not witness or protect from Alex Murray's abuse, and then made severe false allegations against me– which she later recanted and downgraded to accusing me of letting one of my children have 2 full pee diapers and climb on one kitchen counter. Kristin neglected to tell any authorities that she had directly heard Alex Murray threaten me that he would take my children if I stood up to his abuse, or that she frequently completed child custody transfers to between us because Alex would neglect to change C.M.M.'s diaper until C.M.M. soaked through his pants, and then Alex would return C.M.M. to me soaked from the waist down as retaliation for leaving Alex. Alex would also refuse to carry C.M.M. at child transfers, when C.M.M. could not walk, so that I would be forced to stand next to Alex holding C.M.M. up and Alex could use that coerced

time to berate me for leaving him and demand I return to the relationship. For these reasons that Kristin was fully aware of, Kristin completed child transfers. Lying and perjuring for more than 5 years in order to continue getting money from Alex, Kristin has been colluding with Alex to harm my children and me, so that she can retain a salary that she would not have gotten elsewhere, as she did not have the appropriate degree and experience, and her job role wasn't valued at her current salary level. The psychological trauma of her betrayal, perjury, emotional abuse, and her assistance in financial abuse by collaborating on a hostile coercion of my company and income did contribute to my ADA disability.

6. Abuse accomplice and emotional abuser, Anna Killien, Alexander Murray's current partner, whom began assisting Alex in harassing me shortly after their relationship began.

   a. Shortly into their relationship, Anna joined Alex in stalking me to the coffee shop I got coffee every morning, parking in front of my car, and engaging in physical intimacy in front of me to try to inflict emotional distress and harrass me. Anna laughed when I became upset at them for stalking me, and continued laughing while staring at me the entire time I was telling them to leave and to leave me alone. She did not stop her behavior, show many remorse nor respectful behavior, and openly enjoyed following me with Alex and harassing me.

   b. At approximately 3 weeks of dating, Anna began interfering with Alex and my custody agreement, and applying pressure to Alex to negotiate different custody terms.

   c. For their first big date, Alex listed our infant and young toddler child on the internet for $500 for any last-minute stranger to babysit them while he and Anna went out.

   d. At 3 years old, C.M.M. reported that Anna made him stay in the family laundry room and not come out until he had done the family's laundry by himself.

   e. Both children reported that Anna yelled at them frequently, withheld food in collaboration with Alex.

   f. During the beginning of covid, both children were terrified and reported that Anna and Alex had been whispering at the dinner table that they hoped that they would transmit covid to me and kill me; Alex believed he had covid at that time, and exposed the children, and then sent the children to me at a child exchange, hoping that the children would transmit Covid to me and kill me. The children were screaming and crying at the child transfer and ran to me screaming that Anna and Alex intended to kill me with Covid.

   g. Anna has been present in Alex's home while the children have begged to call or to have contact with me, and have been refused contact and/or had the contact cut off after short periods.

   h. Anna has been present in the home for Alex's child abuse, physical and emotional, of my children, and has continued to assist Alex in continuing the abuse.

7. Abuse accomplice, Joan Murray, Alexander Murray's mother, who

   a. began harassing and emotionally abusing me at 6 weeks pregnancy with my oldest, G.E.M., including:

      i. Driving 75mph in a 35mph winding road with hard lava rock on both sides despite me asking her to slow down while I was in the car, pregnant

      ii. Making statements that she hoped something would happen to me that would take me away from my baby so that she could raise it with her son without me present (these statements occurred June 2014, she did actually help her son take my children and then did actually move into his home to carry out her statements)

      iii. Stalked me daily as I walked my children to and from childcare in Michigan, following me in a vehicle driven by her then boyfriend, without my consent and against my requests to leave me alone. A police report was co-filed by Alex and me in Michigan regarding her stalking.

18

    iv.   Attempting to access my child in childcare without consent, by lying to the office staff that she was an authorized guest speaker for the day at the facility; the staff caught the attempt and made her leave the facility. The staff called me and distributed her photo among the school staff and refused her access to the school going forward.

    v.   Telling me that her late father and still living brothers raped and otherwise repeatedly sexually assaulted her and her sisters, and then refusing, along with Alex, to allow me to oppose my children's visitations with these men, and refuse to allow me knowledge of when my children would be exposed to contact with these individuals.

    vi.   Installing her name on Alex Murray's bank accounts while he was coercing my money and income, putting herself in a position to remove any money from his possession. In the event of a legal finding that penalized Alex, I believe Joan would use her access to Alex's accounts to attempt to hide or move money that was coerced from me, in order to make sure I could not be rightfully compensated and have my funds returned.

b. Joan would sneak behind me while I was breastfeeding my children, to peek down my nursing cover and watch me nursing without my consent

c. Joan would sneak into my home in Michigan without my consent, get my baby out of bed, and feed my baby formula from the emergency formula supply while I was a breastfeeding mother and on a breastfeeding schedule. Despite repeatedly asking Joan to stop and to not come in my home nor feed my baby without my consent, Joan continued until I had to change the lock codes and physically prevent her unauthorized entry.

d. On one occasion, Joan took off with my child without my consent. She was supposed to go to the park and come back at a certain time for a family dinner. She stopped answering her phone and did not come back until 45 min after, when all of the family had become concerned and had been calling her. Alex and I stopped allowing her to babysit.

e. On multiple occasions, Joan would play with my infant's feces, and encourage my infant to join in playing games with the feces out of the diaper. I told Joan to stop, but had to physically prevent Joan from changing diapers due to her inappropriate and non consensual behavior.

f. Joan has been present in the home for Alex's child abuse, physical and emotional, of my children, and has continued to assist Alex in continuing the abuse.

g. Joan has been present in Alex's home while the children have begged to call or to have contact with me, and have been refused contact and/or had the contact cut off after short periods.

h. With a history of serious family incest in Joan's life, both children have reported serious discomfort with Joan coercing the children to perform romantic plays that she has written, in which my children have to play romantic interests of one another according to a book of plays Joan has written and bought corresponding costumes for the children to

8. ADA discrimination and abuse accomplices, Rodrigo Lopes and Griffin Deebach, whom conspired with Alexander Murray to deprive me of the ownership of my company and my income after I reported Alexander Murray's domestic violence in the workplace. Alexander Murray began spreading ADA disability rumors about me, naming various ADA disabilities that I do not have, to numerous parties, to influence them to make discriminatory actions against me. Rodrigo Lopes and Griffin Deebach took large sum pay increases from Alexander Murray at the time that they began, all together, erecting communication barriers to create a futile effort for me in the workplace, and in ownership of the company I solo-founded.

9. Child abuse of each of my children, including

    a. physical and psychological abuse, isolation, and

b. alleged sexual abuse of one of my children, by Alexander Murray, which also tortured me psychologically and emotionally.
c. He intentionally continued to abuse the children, knowing that he had cut off our access to mental health, medical health, DCYF help, and court help through vicious smear campaigns on my reputation.
d. Alexander Murray used ADA discrimination and increasing legal abuse to convince more and more people in positions of authority that I was falsely reporting him and "coaching" both children to lie about him. This abuse tactic is called DARVO (deny, aggress, reverse victim and offender).

10. Alexander Murray reversed victim and offender, and had me punished with the removal of my children, company and income, for reporting his crimes. The social and professional shunning, punishment and abuse inflicted irreparable injuries to my brain and nervous system.

11. The catastrophic injuries to me, the isolation of children from mother while also being abused, and the financial and legal damage to us, inflicted emotional and psychological injuries on my children which will impact them lifelong.

12. The abuser, accomplices and helping parties pretending as though I don't exist, am "crazy", am a criminal inside of a prison, or otherwise do not count, do not matter, and do not have a voice that is telling them to stop.

My ADA disabilities have been unanimously diagnosed by numerous medical professionals, both public and private, both paid by me, my insurance, and by the State of Oregon to independently assess. There is zero question as to the nature and scope of my ADA disabilities. My disabilities have been contributed to and worsened by the actions of the individuals and organizations listed in this filing.

My ADA disabilities have been disclosed to all offending parties listed in this complaint, and medical documentation of my disability has been submitted to all official parties. I was coerced into revealing my private HIPPA information to protect my children and me, and still the abuse and discrimination has persisted as if I had not spoken and as if I do not exist– except I have and I do.

I reserve the right to add details and events to this section; I need an attorney and ADA accommodations for re-living and re-telling these traumatic events and topics, and am doing my best without an attorney nor accommodations.

**My Childrens' ADA Disabilities**
One child has had a physical ADA disability since birth. This child has repeatedly reported physical child abuse by Alex Murray. This child has routinely worn medical prosthetic devices on both legs and is physically more vulnerable to physical abuse, due to his medical condition.

The children have exhibited multiple symptoms of psychological ADA disabilities as a result of the abuse and coercive control toward them and toward me. The abusers, the abusive attorney, Washington DCYF, Seattle Police Department, and King County Court, have prevented the children access to qualified domestic violence, coercive control, and Cluster B style abuse experts to properly diagnose their ADA disabilities and investigate that abuse that caused them, and is causing them to persist.

The children also have *disabilities of minor*. They are unable to properly advocate for themselves to get the protection and care that they need, without the help of a protective adult.

I am the only adult who is openly standing up for them and their ADA rights. I am the only adult close enough to them who sees their situation clearly enough to advocate for them. It is my oath as a mother to never stop standing up to protect them, I take responsibility for them because I brought them into this

20

world and I love them more than my own life. Being in the position of their only protector against multi-year battering by multiple abusers and negligent law enforcement, child protective services and public courts is injuring me to a serious, high-risk degree of damage and injury.

When the authorities are discriminating against us on the basis of ADA disability, age and gender, and are actively blocking our access to qualified investigation, mental health and medical expert professionals, and protection, we cannot protect ourselves from the abuse which inflicts further ADA disabilities on the three of us.

### ADA Discrimination

One of the factors of how severe my type of ADA disability can get— and this is true of most PTSD sufferers— is based on how much I am believed and validated and helped to escape and heal by authorities and the community. When a person who has been traumatized is believed, validated, supported and helped to escape and stop the traumatization, PTSD can be improved by the community support. When a community disbelieves, punishes, invalidates, ostracizes and shuns a trauma survivor— or even traumatizes her more or joins with the abuser— PTSD can be greatly exacerbated and increased in severity and scope of both symptoms and triggering events for symptoms. Five plus years of discrimination and disbelief by Seattle PD, Seattle CPS, King County Court while my children and I have begged for help, has worsened the severity of my ADA disability; it has also resulted in noticeable symptoms in the children— who were denied appropriate medical treatment.

### Most Recent ADA Discrimination

*Unlawful "Adequate Cause" Hearing*

March

ADA Discrimination - Commissioner Eagle

-refusing all requests for relief, remediation and mercy from ADA discrimination, retaliation, and abuse resulting in ever-worsening ADA disability

*ADA Discrimination - Ronda Bliey ADA Coordinator King County*

-refusing reasonable and necessary accommodation

-advising on ADA accommodation application requirements that I relied on, only to deny me ADA accommodations for following her instructions

-refusing all requests for relief, remediation and mercy from ADA discrimination, retaliation, and abuse resulting in ever-worsening ADA disability

*ADA Discrimination - Judge Sean O'Donnell*

-Discriminatory statements stating that I don't have an ADA disability that's been medically documented for 5+ years because he felt (with no medical degree and without ever having met me) that I function too well to have an ADA disability

-refusing all requests for relief, remediation and mercy from ADA discrimination, retaliation, and abuse resulting in ever-worsening ADA disability

21

-proceeding with a status hearing without me because he had denied me ADA accommodation

*ADA Discrimination - Commissioner Martin*

-mocked me for ADA disability

-discussed it in open court

-did not help me with Alex's DVPO violation

-punished me with paid phone calls without cause, after she agreed to free phone calls

-refusing all requests for relief, remediation and mercy from ADA discrimination, retaliation, and abuse resulting in ever-worsening ADA disability

*ADA Discrimination - Commissioner Furman*

-denied due process

-issued a second opposing restraining order when I already had a lawful, active DVPO against the abuser

-refusing all requests for relief, remediation and mercy from ADA discrimination, retaliation, and abuse resulting in ever-worsening ADA disability

*ADA Discrimination - Judge Whedbee*

-Discriminatory statements in open court scoffing at me for developing an ADA disability as a result of Alex's abuse, saying "That's it/That's all?" and minimizing my disability and the amount of abuse and trauma it took to be injured into developing it; humiliating. Judge Whedbee appears to have a physical ADA disability and sounded to be discriminating directly against mental ADA abilities, treating my mental ADA disability as if it wasn't valid because it wasn't a physical ADA disability like his.

-Discriminatory statements in open court stating that I don't have symptoms of my ADA disability that's been medically documented for 5+ years, and categorizing my ADA disability symptoms that appear when being abused as "unlawful"

-administering judgement and punishment for my ADA symptoms that happened while I was being abused; depriving me of my parental rights and custodial time for showing symptoms of abuse-til-ADA-disability but not punishing the abuser

-ordering the abuser to write the ruling, findings, and governing parenting plan KNOWING that the abuser would use these powers to further abuse the children and me and worsen our ADA disabilities

-signed pages of false rulings and findings against me, which constituted cruel and unusual punishment and was a direct discrimination to purposely invalidate my longtime documented ADA disability

-refusing all requests for relief, remediation and mercy from ADA discrimination, retaliation, and abuse resulting in ever-worsening ADA disability

*ADA Discrimination - Timothea, attorney at McKinley Irvin*

22

-participated in an unlawful adequate cause hearing against me, knowing that I invoked the ADA and was being denied ADA accommodations

-refusing all requests for relief, remediation and mercy from ADA discrimination, retaliation, and abuse resulting in ever-worsening ADA disability

ADA Discrimination - David Starks

- continued to press for an unlawful adequate cause hearing against me, knowing that I invoked the ADA and was being denied ADA accommodations
- Discussed my ADA accommodations in open court
- "You've been accommodated enough" - verbal discrimination and humiliation in open court
- multiple false statements about the nature of my ADA disability to multiple in court to incite ADA discrimination against me with the goal of depriving me of equal access to the court and protections of the law, and to deprive me of my children
- refusing all requests for relief, remediation and mercy from ADA discrimination, retaliation, and abuse resulting in ever-worsening ADA disability

ADA Discrimination - Alex Murray

-abusing me physically, verbally, psychologically and psycho-sexually to the point of causing me ADA disability to deprive me of equal access to as many public and private spaces and relationships as he could successfully deprive me of, as well as

-to deprive me of equal legal and physical access to our children

-multiple false statements about the nature of my ADA disability to multiple organizations, including law enforcement and in court under oath, to incite ADA discrimination against me with the goal of depriving me of equal access to the court and protections of the law, and to deprive me of my children

-false statements about the nature of my ADA disability to both intimidate me and cover up a multitude of his crimes, including DV assault, DV harassment, child abuse, alleged child sexual abuse of a child under the age of 5, coercive control, and possibly more.

-false statements about the nature of my ADA disability to get me unlawfully arrested for his DV assault

-false statements about the nature of my ADA disability to deprive me of my job, my company ownership, my income, my clients, and my professional network and employee relationships— and to coerce me into the forced sale of my company shares under duress.

-refusing all requests for relief, remediation and mercy from ADA discrimination, retaliation, and abuse resulting in ever-worsening ADA disability

ADA Discrimination - Washington DCYF in Seattle (Amber, Kelsey)

Refusing me access to public services, refusing me equal access to public services based on myths, inaccurate beliefs and open discrimination against my ADA disability. *Reserving the right to add additional DCYF names to this section.*

ADA Discrimination - Kristin Mandrink

-false statements about the nature of my ADA disability/mental health and allegations of child neglect and collusion to deprive me of my children, my job, my company ownership, my income, my clients, and my professional network and employee relationships— and to coerce me into the forced sale of my company shares under duress

-refusing all requests for relief, remediation and mercy from ADA discrimination, retaliation, and abuse resulting in ever-worsening ADA disability

ADA Discrimination - Rodrigo Lopes

-false statements about the nature of my ADA disability and collusion to deprive me of my job, my company ownership, my income, my clients, and my professional network and employee relationships— and to coerce me into the forced sale of my company shares under duress.

ADA Discrimination - Griffin Deebach

-false statements about the nature of my ADA disability and collusion to deprive me of my job, my company ownership, my income, my clients, and my professional network and employee relationships— and to coerce me into the forced sale of my company shares under duress.

ADA Discrimination - Stacie Naczelnik and Bailey Walton, Sound Law

-Refused me ADA accommodations in GAL proceedings

-Continued to coerce me into a futile effort without ADA accommodations

-Agreed to ADA accommodations after nearly a year of coercing me into a futile effort, and then ignored my emails to schedule and ran me out of time to submit any evaluation materials or interviews ADA compliant

-Retaliated against me by announcing that they are releasing the results of the GAL evaluation– without ever including me and after renegging on their agreement to offer ADA accommodations and allow me equal evaluation and equal due process

-Communicating with opposing counsel and the DV perpetrator differently than they did to me, offering two completely opposite qualities of evaluation.

ADA Discrimination - At Indaba (Supervised Visitation Service)

-Threatened to take my children and end my visit if I did not end my phone call to report child abuse to Seattle DCYF. I am a mandatory reporter, and my child C.M.M. reported that he was being thrown into walls by Alexander Murray. C.M.M. has a physical disability and wears

24

prosthetic devices on his legs. I was required by law and my obligation as a mother to report the abuse when C.M.M. reported it to me during the supervised visit in June 2023. The supervisor continued to stand over me and raise his voice, ordering me not to access public services for my child.

-Another supervisor reprimanded me for giving gifts to my children during my one weekend of supervised visit in a calendar year. She reprimanded me, stating that my gifts were not allowed to my children because my children would be abused by their father for receiving them or attempting to keep them. Instead of reporting the children's statements of abuse for receiving mom's gifts and bringing them home, she reprimanded me for giving my children gifts.

*There are other parties who participated in the discrimination. I feel afraid to include their names at this time, because I feel afraid to be additionally targeted and incur more ADA disability injuries, before I have protection, ADA accommodations and counsel. I am reserving the right to add additional names when I have an attorney and protection.*

### Judicial Disability - Whedbee
One judge at King County Court, Judge Whedbee has an ADA disability– a physical disability with similar appearance to quadriplegia. Judge Whedbee stated on the court record during the trial in 2021 that his disability interfered with his ability to type judicial rulings and findings. Judge Whedbee asked the DV abuser, Alexander Murray, and his abusive attorney to write Judge Whedbee's findings and rulings for the judge. The DV perpetrator, assisted by his abusive counsel, wrote the findings and rulings against me from the 2021 trial. Judge Whedbee allowed a DV perpetrator to author the findings and rulings against the DV survivor reporting him. Judge Whedbee's actions were reckless, and caused a DV abuser to have inappropriate power and control over reporting victims. I was advised by my lawyer at the time, and my mental health team not to read the rulings and findings written by DV perpetrator, Alexander Murray, as they advised that doing so would likely worsen my ADA disability. I have not read the findings and rulings for my medical health and safety, and have been informed that they are wrongful, inaccurate, and are a continuation of the abuse.

There is never an appropriate reason for a sitting judge to invite an accused DV perpetrator to write the findings and rulings against reporting victims, nor to accept those writings into the court record as the judge's own findings and rulings.

### Sexual Discrimination

At each step in the case from 2017-present, the abuser and I were not treated with equal evaluation nor held to equal evidentiary standards. The difference in treatment was very obviously due in part to sexual discrimination, in addition to ADA discrimination. Often, the male abuser was held to a lower evidentiary standard, and was not required to provide expert testimony of evidence of his claims for his accusations to be believed. Often, my evidence was discounted or dismissed as non-evidence, even when it contained credible expert testimony and evidence. The abusers statements were validated by court judges even when my evidence disproved it; my statements were invalidated even when the abuser did not have disproving evidence. The court ignored large annual pay raises of +$15k, ~+$50k and ~+$60k to witnesses

by the abuser prior to their testimony and participation in abusive and discriminatory acts towards me.

**VAWA Act Kayden's Law**

- SEC. 1502. FINDINGS.
- (6) Empirical research indicates that courts regularly discount allegations of child physical and sexual abuse when those allegations are raised in child custody cases. Courts believed less than ¼ of claims that a father has committed child physical or sexual abuse. With respect to cases in which an allegedly abusive parent claimed the mother "alienated" the child, courts believed only 1 out of 51 claims of sexual molestation by a father. Independent research indicates that child sexual abuse allegations are credible between 50 and 70 percent of the time.
- SEC. 1502. FINDINGS. (9) Scientifically unsound theories that treat abuse allegations of mothers as likely false attempts to undermine fathers are frequently applied in family court to minimize or deny reports of abuse of parents and children. Many experts who testify against abuse allegations lack expertise in the relevant type of alleged abuse, relying instead on unsound and unproven theories.
- Sec. 1504. "(3) LAWS. —The laws described in this paragraph are the following:
  "(A) A law that ensures that, with respect to a child custody proceeding in which a parent has been alleged to have committed domestic violence or child abuse, including child sexual abuse—
  "(i) expert evidence from a court-appointed or outside professional relating to the alleged abuse may be admitted only if the professional possesses demonstrated expertise and clinical experience in working with victims of domestic violence or child abuse, including child sexual abuse, that is not solely of a forensic nature; and
  "(ii) in making a finding regarding any allegation of domestic violence or child abuse, including child sexual abuse, in addition to any other relevant admissible evidence, evidence of past sexual or physical abuse committed by the accused parent shall be considered, including—
  "(I) any past or current protection or restraining orders against the accused parent;
  "(II) sexual violence abuse protection orders against the accused parent;
  "(III) arrests of the accused parent for domestic violence, sexual violence, or child abuse; or
  "(IV) convictions of the accused parent for domestic violence, sexual violence, or child abuse.
- SEC. 1504. "(B) A law that ensures that, during a child custody proceeding--
  "(i) a court may not, solely in order to improve a deficient relationship with the other parent of a child, remove the child from a parent or litigating party--
  "(I) who is competent, protective, and not physically or sexually abusive; and
  "(II) with whom the child is bonded or to whom the child is attached;
  "(ii) a court may not, solely in order to improve a deficient relationship with the other parent of a child, restrict contact between the child and a parent or litigating party--
  "(I) who is competent, protective, and not physically or sexually abusive; and
  "(II) with whom the child is bonded or to whom the child is attached;
  "(iii) a court may not order a reunification treatment, unless there is generally accepted and scientifically valid proof of the safety, effectiveness, and therapeutic value of the reunification treatment;
  "(iv) a court may not order a reunification treatment that is predicated on cutting off a child from a parent with whom the child is bonded or to whom the child is attached; and
  "(v) any order to remediate the resistance of a child to have contact with a violent or abusive parent primarily addresses the behavior of that parent or the contributions of that parent to the resistance of the child before ordering the other parent of the child to take steps to potentially improve the relationship of the child with the parent with whom the child resists contact.
- SEC. 1504. "(5) TRAINING AND EDUCATION PROGRAM.—The training program described in this paragraph is an ongoing training and education program that–

26

"(A) focuses solely on domestic and sexual violence and child abuse, including--
"(i) child sexual abuse;
"(ii) physical abuse;
"(iii) emotional abuse;
"(iv) coercive control;
"(v) implicit and explicit bias, including biases relating to parents with disabilities;
"(vi) trauma;
"(vii) long- and short-term impacts of domestic violence and child abuse on children; and
"(viii) victim and perpetrator behavior patterns and relationship dynamics within the cycle of violence;
"(B) is provided by--
"(i) a professional with substantial experience in assisting survivors of domestic violence or child abuse, including a victim service provider (as defined in section 40002 of the Violence Against Women Act of 1994 (34 U.S.C. 12291)); and
"(ii) if possible, a survivor of domestic violence or child physical or sexual abuse;
"(C) relies on evidence-based and peer-reviewed research by recognized experts in the types of abuse described in subparagraph (A);
"(D) does not include theories, concepts, or belief systems unsupported by the research described in subparagraph ©

King County, Seattle PD and Seattle DCYF did not meet the requirements of the VAWA Act Kayden's Law in investigating our case. Even upon being informed of the VAWA Act and Kayden's Law, these organizations refused to make any effort at all to engage qualified mental health professionals or otherwise strive to meet any forensic, scientific, equal standard of evaluation in determining the accusations made in this case.

**Forensic Evidence that Meets Scientific Standards of Evaluation**

For our case, there is only one forensic evaluation in existence in this case that meets evidentiary standards under the VAWA Act Section 1504 (A) (i). The only scientifically sound and lawful evaluation in existence in this case, is the forensic evaluation conducted by Oregon DCYF trusted child abuse forensic facility, The Children's Center, in Clackamas County, Oregon, and confirmed by Oregon DCYF interview with my child following the forensic evaluation by panel of psychological professionals and medical doctor. While the evaluation was conducted too long after my child disclosed serious sexual abuse by Alexander Murray, and after Washington DCYF had already contaminated forensic testimony from my child's sexual abuse disclosures, due to preventative efforts by the abuser and aiding and abetting attorney David Starks to close off our access to protective services... **the Children's Center report corroborated my child's reports of child abuse by Alexander Murray**. The Children's Center also investigated me through forensic interviews by panel, which I voluntarily submitted myself for forensic evaluation and would do so again and again and again to help my children. **The Children's Center found that my testimony is truthful and accurate**.

My children have a right to unlimited qualified assessment and ongoing treatment by psychological professionals who are experts in child abuse, domestic violence, coercive control, and Cluster B style abuse (abuse inflicted by perpetrators who are symptomatic of Narcissistic Personality Disorder and/or Psychopathy, as evidenced by their style of covert and/or sadistic multi-faceted abuse of others). As long as my children are
1. Reporting being thrown into walls and furniture by Alex Murray,

27

2. Reporting physical child abuse against a child who has a physical disability and wears prosthetic devices on both legs
3. Isolated from protective services and law enforcement and protective adults by Alex Murray
4. Reporting oral rape by Alex Murray
5. Reporting being hit over the head or
6. Grabbed and picked up by the neck by Alex Murray
7. Deprived of food nightly by Alex Murray and are having to request food supplies at school
8. Report trauma pain in their bodies from frequent emotional abuse by Alex Murray
9. Report fear of Alex Murray's physical and emotional punishments

They have a right to access protective and health services, independently from Alex Murray's decision-making and control.

**Association of Family and Conciliation Courts (AFCC) Bench Recommendations Violate the Federal VAWA Act and Contradict Psychological Science**

The following argument below is a verbatim argument from Dr. Craig Childress, an expert in psychological pathology in abusive parents and how abusive parents use family courts to further abuse both children and psychologically safe, protective parents. Dr. Craig Childress has recognized that American Family Courts, like King County Court, are largely ignoring psychological science and the VAWA Act Kayden's Law– even when provided scientific evidence. I'm submitting his expert words in quotation:

> "The Association of Family and Conciliation Courts (AFCC),is the professional organization for forensic psychologists and family law attorneys. The AFCC specifically instructs child custody evaluators NOT to diagnose pathology.

> The AFCC has published an instruction guide for child custody evaluations, the *Model Standards of Practice for Child Custody Evaluations*.

> With this document, the AFCC has put their seal of approval, their imprimatur, on the practice of child custody evaluations. I believe that is significant, because I wonder what sort of legal liability that establishes for the AFCC regarding the assessment procedure of child custody evaluation.

> I'm not a lawyer, but as a psychologist I'd be worried if I were on the Board of Directors for the AFCC about the potential legal liability exposure this *"Model Standards of Practice"* creates for our organization. If we're telling people how to do it, and providing our professional credibility, name and status to the activity, then to what extent do we also incur legal liability responsibility for endorsing and recommending the practice?

> If I'm on the Board of Directors as a clinical psychologist, I'm going to want our attorneys to offer an opinion on that, and I'll want our attorneys to review our *"Model Standards of Practice"* with an eye toward legal liability exposure before we publish them and provide our organization's imprimatur of support for the practice.

And, on the other hand, if I'm considering a class action lawsuit against the practice of child custody evaluations for essentially being a fraudulent financial racket (I'm not a lawyer, but if I were, I'd seriously look at a Rico violation with the AFCC as the organizing syndicate and the child custody evaluators as the capos), I'd be looking at linking the AFCC to the lawsuit specifically on this document, their *Model Standards of Practice for Child Custody Evaluations*.

Seems to me… they took ownership of the practice of child custody evaluations with that document.

Principle D Justice

The first problem the AFCC faces is that the practice of child custody evaluations is a foundational violation of **Principle D Justice** of the American Psychological Association ethics code. Child custody evaluations, as a practice, are in violation of a foundational Principle of ethical practice, Justice, on two separate and independent counts.

**Principle D: Justice**
Psychologists recognize that fairness and justice entitle all persons to access to and benefit from the contributions of psychology and to equal quality in the processes, procedures, and services being conducted by psychologists. Psychologists exercise reasonable judgment and take precautions to ensure that their potential biases, the boundaries of their competence, and the limitations of their expertise do not lead to or condone unjust practices.

Let's begin to apply this Principle of professional ethics to the practice of child custody evaluations…

"fairness and justice entitle all persons to access to and benefit from …"

A typical child custody procedure costs between $20,000 to $40,000 for each evaluation. That financial cost places the practice of child custody evaluation beyond the affordability of all but the most affluent of families. Since lower-income families are offered no alternative, they must turn to substandard assessments conducted by less qualified, and often unqualified, professionals because the more qualified professionals and assessments are cost-prohibitive.

The most expensive clinical psychology assessment for the most complicated child pathology (e.g., trauma with autism-spectrum and ADHD features, learning disabilities, involving prenatal exposure to drugs, foster care placement, and current behavioral problems) would cost around $5,000 and take between four to six weeks to complete, with a report, for a high-end comprehensive assessment. A typical clinical psychology assessment for most pathologies costs about $2,500.

29

That forensic psychology cannot develop an assessment protocol for their "high-conflict divorce" pathology for less than $20,000 to $40,000 strains credulity, and raises prominent professional concerns about their exploitation of a vulnerable population, the class of parents in family court litigation surrounding child custody and visitation schedules.

Forensic psychology claims this population as their exclusive property, prohibiting any recommendation for child custody visitation schedules being offered by clinical psychologists based on any criteria OTHER than the conduct of their $20,000 to $40,000 child custody evaluation procedure.

As a treating clinical psychologist with full, direct, and ongoing knowledge of the pathology in the family, I can form a professional opinion on the relative benefits of different custody visitation schedules… I just can't tell the court my opinion. I am prohibited from telling the court my opinion unless I've conducted one of their $20,000 to $40,000 child custody evaluations. Then I can tell the court my opinion.

Parents who cannot afford the excessive and obscene cost of a child custody evaluation are denied "access to and benefit from" quality professional input into their family litigation and the court's decision-making. That is a fundamental violation of Principle D… "fairness and justice entitle all persons to access to and benefit from …", less affluent families are being denied "access to and benefit from " the input of professional psychology.

The practice of child custody evaluations, endorsed with guidelines from the AFCC, is foundationally in violation of **Principle D Justice** of the APA ethics code for denying "access to and benefit from" quality professional input into their court-involved family conflict because the excessive and prohibitive financial cost of their immensely bloated and ill-conceived assessment procedures.

"fairness and justice entitle all persons to… equal quality in the processes, procedures, and services being conducted by psychologists."

There is no inter-rater reliability to child custody evaluations. This means that child cusody evaluations are not a valid assessment of anything, they are just the opinion of one person, the evaluator, based on no supported foundations.

The absence of inter-rater reliability means that different evaluators can reach entirely different conclusions and recommendations based on exactly the same family information and data. Families are therefore denied "equal quality in the processes, procedures, and services" by the absence of inter-rater reliability to the procedure.

Two of the prominent experts in forensic psychology, Stahl and Simon, who literally wrote the book on child custody evaluations, published by the Family Law Section of the American Bar

Association, acknowledge the high degree of variability in the quality of "services" delivered by child custody evaluators.

**From Stahl & Simons:** "The American Board of Forensic Psychology is a subspecialty board of the ABPP. In the fall of 2011, there were approximately 250-300 ABPP board certified forensic psychologists in the United States and an unknown number of psychologists who specialize in forensic work but are not board certified. On top of that, there are many psychologists who dabble in forensic practice, occasionally performing child custody or other types of forensic evaluations, and who find themselves called to testify in court on occasion. While we recognize that there is a range of quality in their work, it is clear that forensic psychology is a growing area of specialization." (Stahl & Simons, 2013, p. 9)

Stahl, P.M. and Simon, R.A. (2013). Forensic Psychology Consultation in Child Custody Litigation: A Handbook for Work Product Review, Case Preparation, and Expert Testimony, Chicago, IL: Section of Family Law of the American Bar Association

The procedure of child custody evaluations violates **Principle D Justice** of the APA ethics code by failing to provide "equal quality in the processes, procedures, and services being conducted by psychologists." This is an openly acknowledge fact ("we recognize that there is a range of quality in their work"; Stahl & Simon, 2013).

To the extent that the AFCC issues *Model Standards of Practice for Child Custody Evaluations* they are providing recommended "Standards of Practice" for an unethical procedure.

Avoiding Diagnosis

Diagnosis is considered professional standard of practice in all cases. Diagnosis guides treatment. The treatment for cancer is different than the treatment for diabetes. In order to develop a treatment plan and recommendations (any recommendations), we must first know what the pathology is, what's the diagnosis?

The treatment for cancer is different than the treatment for diabetes. Diagnosis guides treatment.

How can we possibly know what to do about a problem, until we first identify what that problem is. The term "identify" is the common-language word for the professional term "diagnosis." We must first identify what the problem is in order to know how to fix it; we must first diagnose what the problem is in order to know how to treat it.

identify = diagnosis

fix = treatment

3\

It is professional standard of practice to first diagnose (identify) the pathology before offering any recommendations about what to do. If we don't know what the problem is, if we haven't identified (diagnosed) what the problem is, how can we possibly know what to do about it?

Failure to first diagnose (identify) what the pathology is prior to making recommendations about how to fix it (treatment or remedy) would be a violation of **Standard 9.01a** of the APA ethics code requiring that;

**Standard 9.01a 9.01 Bases for Assessments**
(a) Psychologists base the opinions contained in their recommendations, reports, and diagnostic or evaluative statements, including forensic testimony, on information and techniques sufficient to substantiate their findings. (See also Standard 2.04, Bases for Scientific and Professional Judgments.)

If the assessing evaluator has NOT even identified what the problem is (diagnosis), then the recommendations contained in their "reports, and diagnostic or evaluative statements, including forensic testimony" are not based on information "sufficient to substantiate their findings" because they don't even know what the pathology is – they have not yet even identified – diagnosed – what the problem is.

In addition, the *Model Standards of Practice for Child Custody Evaluations* from the AFCC specifically instruct child custody evaluators to AVOID making a diagnosis.

**4.6 Presentation of Findings and Opinions**
(c) Evaluators recognize that the use of diagnostic labels can divert attention from the focus of the evaluation (namely, the functional abilities of the litigants whose disputes are before the court) and that such labels are often more prejudicial than probative.

While not directly prohibiting child custody evaluators from identifying what the pathology is (the "diagnostic label") prior to offering recommendations to the court, the clear indication from the AFCC is that identifying pathology (the "diagnostic label") is "often more prejudicial than probative" and should be avoided, because it "diverts attention" from the true focus of the assessment, which must be something other than identifying what the problem is and offering recommendations on how to solve it.

Diagnosis guides treatment. We do not know what to do about a problem until we first identify (diagnose) what that problem is. The treatment for cancer is different than the treatment for diabetes.

In addition to the deeply troubling prominent encouragement from the AFCC to avoid diagnosing pathology before making recommendations to the court, is the further troubling assertion from the AFCC that child custody evaluators should strive to influence the court's decision-making by withholding from the court information about pathology that the custody evaluator thinks might be "prejudicial" to the case of the pathological parent.

32

The AFCC is recommending that the child custody evaluator preempts the court's authority to assess the relative value of a "diagnostic label" (identifying what the problem is), and that the child custody evaluator should instead independently weigh the relative "prejudicial" and "probative" value of disclosing to the court the identifying name for the pathology in a family, apparently to influence the court's decision in favor of the pathological parent by withholding diagnostic information from the court's consideration.

It is a deeply troubling role for a child custody evaluator to be making preemptive decisions on the relative prejudicial and probative value of diagnostic information in order to then withhold information from the court's consideration that will influence the court's decision in favor of a pathological parent, based solely on a decision made by the custody evaluator regarding the relative prejudicial and probative value of the information.

Not only is this diagnostic information withheld from the court's consideration, it is also **not disclosed** to the parties. This violates the rights of the non-pathological parent to present evidence to the court because the relevant evidence is being **arbitrarily withheld** from disclosure to the parent by the child custody evaluator, based on instructions made to the evaluator from the AFCC in their *Model Standards of Practice for Child Custody Evaluations*, Standard 4.6(c).

In issuing *Model Standards of Practice for Child Custody Evaluations*, to what degree has the AFCC assumed legal liability for the practice of child custody evaluations?

Principle D Justice

"Psychologists... take precautions to ensure that their potential biases, the boundaries of their competence, and the limitations of their expertise do not lead to or condone unjust practices."

How?

How have child custody evaluators taken "precautions" to limit their "potential biases"? What specific precautions in the child custody interview process has that child custody evaluator taken to limit the "potential biases" of the evaluator?

The mother in the case reminds the evaluator of his ex-wife, the tone of her voice, what she says. She's really irritating. The custody evaluator doesn't agree with the cultural parenting practices and values of one of the parents, he just doesn't think that's the right way to parent.

What precautions did that child custody evaluator take in that evaluation to limit the potential biases – many of them unconscious biases (the evaluator may have mommy-issues or daddy-issues, may have been sexually abused as a child and harbor unconscious anger toward "abusive men").

33

What type of "precautions" are taken?  None.

Child custody evaluations take NO precautions to limit "potential bias."

What "precautions" did the custody evaluator take to ensure boundaries of competence?

This is an attachment pathology, a child rejecting a parent.  Where on the custody evaluator's vitae does it demonstrate background training and experience in assessing, diagnosing, and treating attachment pathology?

This is a family conflict pathology.  Where on the custody evaluator's vitae does it demonstrate background training and experience in family systems therapy.  Or do they assert that family systems therapy, one of the four primary schools of therapy and the only one dealing with families… is not relevant to boundaries of competence.

Do they believe that knowing about families and how families function is <u>not</u> required knowledge for assessing, diagnosing, and treating family conflict pathology?

How has the custody evaluator taken "precautions" to ensure their boundaries of competence? What precautions?"

# Civil Rights Violations

King County Court, Seattle PD and DCYF have violated numerous of my childrens' and my civil rights:

First Amendment Civil Rights Violations

Throughout this horrible, traumatic experience, I have used my voice and my written voice to express myself and work to get this situation to stop. My voice and my written voice have expressed my disability, and expressed my distress, pain and suffering, fear, trauma,

I am an American and I have a first amendment right to express myself fully and completely about what is happening to me.

In the same way that it is illegal to punish someone with down syndrome from drooling and moaning sounds that are unintelligible to all but those who know them well, or… it is illegal to punish someone with Tourette's from swearing out loud, or… it is illegal to punish a dying murder victim for screaming

34

insults at their murderer, or… iIt is illegal to punish a rape victim for striking back at their attacker and screaming…

..it is also illegal to punish domestic violence and coercive control survivors with ADA disabilities (especially from the ongoing abuse), for outcrying with any spoken and written word that expresses the trauma of the experience with natural sound and voice and written voice. All of my expressions were in defense of others with disabilities of minor, and in defense of self, and to express the pain and trauma and fear I experienced while suffering the commission of a multi-year series of crimes by Alexander Murray and the accomplices he recruited to help him. My statements, speech, outcry, and written communications made with the intention to stop the violence against me, are protected speech under the first amendment, and are necessary actions and expressions in defense of self, and are covered under civil rights.

Seattle PD, Seattle DCYF, King County Court, and the GAL have punished me and denied me equal access and due process, frequently citing my verbal and written statements, outcrying against the abuse and invoking my rights, advocating for the end of the discrimination and abuse, etc. King County Court has taken action to write rulings, punish me, and take away my parental rights to obtain mental health care and medical care for my children citing my use of my free speech to report Cluster B style abuse of my children and me. King County Court is now trying me for "psychological abuse"-- against forensic evidence, and has erected insurmountable barriers to mother-child visitation and telephone contact in retaliation for me continuing to use my right to free speech and invoking my childrens' and my ADA rights and Civil Rights, petitioning for government redress of grievances– and petitioning the public for relief from all items cited in this complaint.

I have to use my first amendment right; it's the only chance at protection that my children and I have. We are entitled to our free speech.

Second Amendment Civil Rights Violation
The point of the second amendment is to give the people protection against government abuse. The only weapon I have against the abuse is open access to mental health professionals and medical professionals for my children and me. When King County Court took away my rights to obtain mental health and medical professionals for my children, and together with my children, away from the abuser we are actively reporting for the past 6 years, they took all of my ability to defend myself from their discrimination and abuse. Doing so left me defenseless to stop the damages that they did to us. They then punished me for my brain injuries that were inflicted by the abuser, together with their efforts.

**Third Amendment Civil Rights Violation**
The point of the third amendment was to prevent citizens from having to bear the cost and risk to themselves of having a government agent in their home. King County Court required me to pay for and host in my home for evaluation, a Parenting Evaluator that was not qualified to assess a Cluster B style DV perpetrator, and who did not actually identify nor protect from that perpetrator. Instead, parenting evaluator Dr. Melanie English helped King County Court to inflict harm on me– harm that I was forced to pay for and house their agent for. I would not have paid this agent of King County Court, nor allowed her into my home, had I not feared for the safety of my children and myself from King County's negligent DV response systems and practices.

**Fourth Amendment Civil Rights Violation**
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

35

King County Court seized my children from me, even after being provided with an Order for Protection, issued in the State of Oregon, a forensic interview proving the validity of my childrens' and my need for protection, evidence that the DV perpetrator openly violated the restraining order in the State of Oregon, and even after being provided with multiple pieces of evidence of my ADA disability. Seattle DCYF collaborated in this effort, even after being informed by Oregon DCYF caseworkers and forensic evidence that they had wrongfully continued enabling and supporting the DV perpetrator to seize the children through King County Court and law enforcement. Both groups erected insurmountable ADA barriers, financial barriers, communication barriers, and barriers to obtaining additional factual evidence.


Fifth Amendment Civil Rights Violation

no one shall be "deprived of life, liberty or property without due process of law."

Washington State and King County Court have neglected to create adequate systems for protection of my fifth amendment rights. When confronted with this fact, the legal institutions of Washington State and King County Court have made zero effort to remedy the deprivation of my life, liberty, and property without due process of law– and the deprivation of my children's same rights.

The VAWA Act prescribes, in plain language, the methods for ensuring equal due process of law in child custody hearings. Emotional and physical domestic violence and child abuse are illegal in Washington State and Federally– yet these institutions have refused to exercise factual, forensic investigation despite numerous reports by my children and me that we are being abused by a Cluster B-style perpetrator.

In addition, the following fifth amendment argument must be made, for health and public safety:
"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

Persons in US Family Court, including myself, are being accused by the opposing party and the court, by proxy, of committing crimes. King County Court is accusing me of the crime of psychological abuse of two children. I have not committed these crimes, and have fervently fought for the opposite: the freedom of my children from abuse. The point must be made that King County Court is trying me for a criminal offense, albeit in a different court venue, and is forcing me to go through trial without the option of a jury, forced through proceedings without legal counsel, deprived of my health through the resulting ADA disability of brain and nervous system damage from wrongful litigation, discrimination and abuse, without due process or equal evaluation. The court is actively suppressing my ability to obtain evidence, is twisting its interpretation of materials provided by the abuser to suit favoring the abuser– without any scientific nor factual basis, is committed to misunderstanding Cluster B style abuse and its damaging impact on survivors' brains and nervous systems, and has caused me to capitulate to the abuser for the past 6 years through multiple coerced settlements which have deprived me of my children, my company and my income.

Amendment VI
Amendment VI violation applies because King County is trying me for crimes which violate Washington State law, without an impartial jury, and without actually being informed of the specific nature of the crime. I am being tried for "psychological abuse" of two children, without any forensic evidence evidencing any damages to the children caused by me– only gossip from a DV perpetrator, Alex Murray, whom the children and I have reported for DV abuse for 6 years and have provided forensic evidence to medical staff, psychological evaluators, police, DCYF and the court. Targeting the reporting survivors in illegal, largely hidden processes

and proceedings, without counsel, jury option nor ADA accommodations is a violation of my children's and my rights.

Amendment VII
I accuse Alex Murray of coercing millions of dollars from me, in a Cluster B pattern of domestic violence and coercive control. King County Court's negligent, discriminatory and abusive systems and responses deprived me of the ability to collect factual, scientific evidence and take Alex Murray to a civil jury trial.

Amendment VIII
"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

King County Court imposed fines of $1000-1500 per daytime weekend mother-child visit (approximately $100 per hour) while I was testifying to the court that I could not pay these fines due to ADA disability from the DV perpetrator and discrimination/abuse/negligence from the court affecting my ability to earn income. I told the court that these fines would result in involuntary mother-child separation for long periods of time, and the court imposed them anyway, despite the fact that I have a completely clean, clear criminal, abuse drug and alcohol, and psychological forensics record and am a loving, present, appropriately protective mother to my children. The fines effectively reduced my children's time with mom from 40-45% parent-child residential time to 1 single weekend visit in 2023, loss of all holidays, birthdays, vacation, family events, etc. The fines prevented my children from seeing their entire maternal family relatives. The court also imposed zero mother-child phone calls– which the abuser used to deprive the children of all mother-child contact and isolate them.

To deprive a 7 and 8 year old child of their mother and all maternal relatives was excessive, cruel and unusual to each of the children– especially because it was a punishment for the children truthfully and accurately reporting and resisting abuse by their father. This type of punishment to children causes injuries to the brain and nervous system of the children. My children are still enduring this cruel and unusual punishment.

This cruel and unusual punishment to deprive a healthy, safe, appropriately protective mother of her two children and put them in the isolated power and control of their DV abuser, who shows symptoms of Cluster B Personality Disorder mental illness, a propensity for sadistic emotional abuse, is psychological and emotional torture. I have spent nearly every day with physical pain in my nerves, particularly the nerves running from my chest to my neck, and pain in my brain. At times the pain is so severe and debilitating, prescription medication cannot stop it. I take multiple prescription medications 24 hours per day to work to control the physical pain from the nervous system injury. I worry about my children daily, and despair what is happening to them and to me.

Additionally cruelly, is forcing me to disclose this pain publicly. Alexander Murray is symptomatic of Cluster B personality disorder mental illness with sadistic features; he gains pleasure and motivation to harm by 1) causing harm to his victims and 2) confirming and observing the harm himself. King County Court and DCYF coercing me into an ADA futile effort that is physically and mentally damaging to me is multiples more cruel and unusual, because it is forcing me to demonstrate pain openly in front of an abuser who will enjoy it and target me worse to keep achieving ever-heightening levels of satisfaction with harming and damaging me.

Amendment IX
"The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people"

Alex Murray's civil rights cannot extend to infringe upon all of mine. King County Court, Seattle PD, DCYF's rights cannot extend to infringe upon all of mine.

Amendment X

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people."

The constitution and state law does not explicitly address Cluster B Mental Illness in Perpetrators, nor how a private citizen may defend herself from Cluster B style psychological attacks and coercive control. I have the power as an individual, having truthfully and accurately identified Alex Murray's Cluster B style psychological attacks, coercive control and pattern of covert physical abuse, to defend my children and myself from it. I have made good faith efforts to identify the problem, inform the sitting government of the problem, inform the sitting government of the gaps in their criminal response systems that allow Cluster B style abuse, and have not been served nor protected by my government– and I have acted with my Tenth Amendment right to use the powers that I have individually to fight off a criminal abuser, in defense of other (my children) and of self.

Countries such as UK, France, Ireland, Australia, New Zealand, and states, such as California, have recognized the failure of governments, including the US Constitution, to delegate powers to government specifically the protection of women and children from Cluster B style "coercive control"-- a pattern of systematic abuse, control and battering designed to harm and deprive the victims of life, liberty and property. These countries and states have taken steps to shore up laws to protect; the United States government and Washington State have not. I had to use my power by myself, because I could not get help and protection from the government– and my children and I are being punished for it.

Amendment XIII
"Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."

King County Court is forcing me into involuntary servitude because it is forcing me to pay child support to the DV abuser, that amounts to more than I can earn and afford to cover my basic living expenses, while suffering from an ADA disability, while being subjected to a discriminatory trial that is worsening my ADA disability, while suffering from the mental torture of my children being taken and abused, while struggling to pay to defend myself from the abuse and discrimination, while being unable to afford ADA compliant parenting supervisors which the court imposed expensive fines as barriers to mother-child contact, etc.

King County Court denied my petition to lower my child support payments to the DV perpetrator, despite the DV perpetrator being a millionaire from coercing my income and my company, while I cannot pay my expenses or financially oppose the discrimination and abuse.

Amendment XIV
"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

My children's rights have been stripped, and they are forever injured. My rights as an American and as a Mother have been stripped by King County Court for truthfully and accurately reporting Cluster B style DV abuse and coercive control, and I am forever injured. My parental rights are non-existent in practice. My personal and professional reputation, income, company ownership and earning power was destroyed. The abuser is free, has full control over his two child victims, has all of the money and company shares he coerced, and profited from his crimes. He pays or otherwise financially benefits the witnesses he brings into court proceedings. There is no equality occuring in King County in our case.

I am reserving my right to submit additional examples of civil rights violations with specifics; I need counsel and ADA accommodations.

## Family Damages

Loss of both children

Children's loss of maternal family relationships

**Emotional Damages**

-Loss in the hope that someone with the power will stop the abuse or do the right thing

-Loss of belief in my country and my citizenship

-Years of grief

-Years of sadness

-Years of fear, nightmares, physical stomach pain from emotional distress

**ADA Disability Damages**

Daily and full-time sudden onset of symptoms of the following:

1. Long-term physical pain in my nerves from prolonged nervous system activation, particularly the nerves in my chest

2. Irregular heartbeat/arrhythmia

3. neurological pain from PTSD activation, sudden brain pain

4. Jaw pain

5. Migraines with PTSD activation

6. Sudden gastrointestinal distress with PTSD activation

7. Vision changes, feeling like I'm wearing binoculars on my face

8. Fear of eye contact

9. Nausea

10. Inability to concentrate

11. Crying

12. Fear for my children

13. Deep pain of missing my children and being separated and unable to help them

14. Nightmares

15. Flashbacks

16. Rumination with flashbacks, trying to go back in time and defend the children and me

17. [added 6-12-23 due to fear of stigma and ADA discrimination: risk of imminent suicide 2018-2023 due to severe ADA disability and ongoing abuse and discrimination and involuntary mother-child separation with children being given to the abuser unprotected]

particularly triggered by the presence of:

1. any individual exhibiting Cluster B traits and behaviors
2. DV or abuse in any form
3. law enforcement
4. fast approaches by men
5. "love bombing" and other manipulative behaviors
6. judges or commissioners, particularly yelling, accusing, punishing but also just the presence of a person in this role
7. court personnel
8. opposing counsel
9. trauma-uninformed medical staff or mental healthcare providers,

Most usually in the following environments:

1. Child exchanges
2. Zoom hearings
3. Courthouses
4. Open public spaces
5. Inside vehicles
6. Workplaces or work environments
18. Environments with an authority of power dynamic
19. Date environments
20. Inside homes and domestic settings

Economic Damages

~$475,000+ in annual compensation for ownership and employment in my solo-founded advertising company (Triomphe, re-named Voglio Marketing)

Loss of employment and professional reputation which has resulted in inability to get hired in my profession

Loss of earnings due to ADA disability

Substantial financial damages for medical and mental health expenses to survive the trauma caused by the organizations and individuals listed in this report. *I reserve the right to add names to this filing, I need an attorney and ADA accommodations like a psychologist, to help me manage this case medically for myself.*

Social Damages

-Loss off social reputation

-Impaired ability to socialize or participate in social relationships due to ADA disability severity during times of frequent and severe, long-term abuse

21.